## PARSONS v. SHARPE.

### Opinion delivered March 11, 1912.

1. ADVERSE POSSESSION—EFFECT OF CONVEYANCE BY COTENANT.—A conveyance by a cotenant of the entire estate to a stranger gives color of title; and if possession is taken, and the grantee claims title to the whole, it amounts to an ouster of the cotenant, and the possession of the grantee is adverse to them. (Page 615.)

2. SAME—EFFECT OF CONVEYANCE BY. COTENANT.—Where a conveyance is executed to a stranger by certain tenants in common, purporting to convey only their undivided interest, such grantee becomes a tenant in common with another cotenant; and, in order to constitute an ouster, the latter must either have actual notice of the adverse holding of such grantee, or the hostile character of his possession must be so openly manifest that notice on the cotenant's part will be presumed. (Page 615.)

3. SAME—INTENT OF COTENANT.—In order for the possession of a tenant in common to be adverse to an absent cotenant, there must have been

an intention, manifested by overt acts or conduct, on the part of the occupying tenant to claim adversely and in hostility to the rights of such cotenant, and such intention may be proved by direct evidence or by circumstances.    (Page 616.)

Appeal from Jackson Circuit Court; *R. E. Jeffery,* Judge; reversed.

*Gustave Jones* and *John W. & Joseph M. Stayton,* for appellant.

1.   Actual notice of an adverse holding need not, under the proof in this case, have been brought home to the plaintiff, but he should have been held to have had notice thereof from the notoriety and quality of the acts of ownership which had been exercised over the property by the defendants, and the court erred in not so holding.   137 S. W. 553; 24 L. R. A. 261.

2.   If it were true that defendants were without color of title, which is not conceded, their claim is good because they have had actual adverse possession for the statutory period. 33 Ark. 151; 30 Ark. 640.   But the deed from Coffin, taking into consideration all the surrounding facts and circumstances of the trade between Parsons and Coffin, constitutes sufficient color of title.   45 Ala. 482; 5 Pac. 661; 11 Atl. 60; 45 Pa. St. 140; 23 Pa. St. 503; 8 Pa St. 503; 4 Watts & S. (Pa.) 32; 3 Watts (Pa.) 69; 1 Serg. & R. (Pa.) 111; 2 Hill (S. C.) 496; 117 N. C. 393; 73 Mo. 538; 60 Mo. 420; 60 Mo. 105; 52 Mo. 108.

*Stuckey & Stuckey,* for appellee.

1.   None of the deeds purports to carry the entire interest in the property, but only the undivided interest of the particular grantor conveying, and all the deeds were recorded. Parsons was bound to take notice of R. W. Sharpe's title, and the latter had the right to rely on the constructive notice of his title given by the record.   89 Ark. 23; 50 Ark. 327.   The entry and possession of one tenant in common is regarded in law as the entry and possession of all cotenants, and will inure to the benefit of all.   17 Am. & Eng. Enc. of L. (2 ed.) 669, 661-2; 42 Ark. 289; 55 Ark. 104; 61 Ark. 527; 88 Ark. 612; 77 Am. Dec. 614; 138 S. W. 958; 21 Am. & Eng. Enc. of L. 1149; 3 How. 690; Tiedeman, Real Prop., 251.

2.   There can be no adverse possession against a cotenant until there has been an actual ouster or some act deemed in

law equivalent thereto. 1 Am. & Eng. Enc. of L. (2 ed.) 802-803; 42 Ark. 289.

In order for an adverse holding to amount to an ouster, there must be actual notice thereof, or the possession must be of such hostile character, so open and manifest, that notice will be presumed. 1 Am. & Eng. Enc. of L. (2 ed.) 805; 132 S. W. 1002; 138 S. W. 958; 77 Am. Dec. 614; 55 Ark. 104; 88 Ark. 612.

3. The question of adverse possession being one of fact for a jury or a court sitting as a jury, the court's finding in this case will not be disturbed. 23 Ark. 24; 31 Ark. 476; 40 Ark. 144; 60 Ark. 250; 38 Ark. 139; 45 Ark. 41; 50 Ark. 305; 68 Ark. 83; 70 Ark. 512.

4. Since all of the deeds convey only undivided interests of the grantors therein, and none purports to convey the interest of appellee, there is no color of title in appellants as against him. 47 Ark. 528; 67 Ark. 188; 45 Ark. 419; 72 Ark. 610.

McCULLOCH, C. J. In the year 1889 one Brewer sold and conveyed two lots in the town of Swifton, Jackson County, Arkansas, to appellee, R. W. Sharpe, and his mother, Sarah Sharpe, and brother, George M. Sharpe, as tenants in common. Sarah Sharpe died intestate on January 19, 1891, leaving surviving as heirs at law her children, the appellee, and George M. Sharpe, James B. Sharpe, C. L. Sharpe, and Lulu E. Coffin. Some time during the year 1892 appellee disappeared from his home at Wynne, Arkansas, and was not heard from by any of his friends or kindred until the year 1909, when his brother, C. L. Sharpe, received a letter from him written in California, where he resides. In the meantime James B. Sharpe, on June 11, 1897, conveyed his undivided interest in the lots, by quitclaim deed, to M. E. Coffin; on March 23, 1901, C. L. Sharpe, George M. Sharpe and Lula E. Coffin conveyed their undivided interests in said lots to said M. E. Coffin; and on December 9, 1899, M. E. Coffin conveyed all of her interest in said lots to F. M. Parsons, one of the appellants, who, on April 26, 1905, conveyed one of the lots to his co-appellant W. T. Altman. Appellant Parsons took possession of the lot at the date of his said purchase, and with his grantee, Altman, occupied the same continuously up to the present time. At the time of the said purchase by appellant Parsons there was

a small dwelling-house on lot No. 6, the other lot being fenced and used as a garden. During the period of his occupancy, he expended the sum of $432.29 in enlarging and repairing the house, and appellant Altman, after the conveyance of lot No. 5 to him, built a dwelling house thereon at a cost of $800. They also paid taxes on the lots each year. Appellee wrote to his brother, C. L. Sharpe, from California in the year 1909, and subsequently employed an attorney, who instituted for him separate actions in the circuit court of Jackson County against appellants, Parsons and Altman, on December 17, 1909, to recover possession of said lots. Appellants each pleaded the seven-years statute of limitations, and by consent of all parties the cases were consolidated and tried together before the court sitting as a jury.

The evidence tends to establish the fact that appellee was sick and very feeble when he left Wynne in 1892, and that his relatives, after failing to hear from him, supposed that he was dead. None of them ever heard from him until his brother, C. L. Sharpe, received the letter from him in 1909, as before stated. J. B. Coffin, who is the husband of M. E. Coffin, and negotiated the purchase of the property from the Sharpes, testified that when he negotiated the purchase they all took it for granted that appellee was dead, and that his (witness') wife, M. E. Coffin, was getting title to the whole property, having previously purchased the interest of James B. Sharpe, one of the heirs. C. L. Sharpe, who represented the other grantors in the negotiations, testified that nothing was said about his brother (R. W. Sharpe) being dead, but admitted that they had not heard from him since he left in 1892, and all supposed he was dead. Appellant Parsons testified that he purchased the lots and paid the full value therefor on the basis that he was getting title to the whole—that appellee had not been heard from since he left and was supposed to be dead—that his grantor represented to him that all the heirs were satisfied appellee was dead. This is not contradicted. He testified further that he occupied the property, claiming it as his own, and improved it.

The testimony further shows that, aside from the improvements placed upon the lots, they became greatly enhanced in value after the conveyance to appellants.

It is not explained by any one why M. E. Coffin conveyed the property to Parsons before the date of her deed from the Sharpes, but it seems to be conceded that she intended to convey all of the title that she received from them, and it is fair to assume, from the circumstances, that when she conveyed to Parsons she had already negotiated the purchase from the Sharpes, though the deed to her was not executed by them until later.

The court found that at the time of the said conveyance to the Sharpes appellee's "whereabouts were unknown, and he was supposed to be dead by the parties to said conveyance," that appellants had the sole use and occupancy of said property since their purchase, and that they had made improvements on the lots to the amount stated above, but declared that appellants and appellee were tenants in common, and that, "there being no notice to the plaintiff that the claims of the defendants, Parsons and Altman, were adverse to his, their possession can not in law amount to an adverse holding thereof as against said plaintiff."

The rule sustained by the overwhelming weight of authority with reference to conveyances by one or more cotenants to a stranger, and the character of possession taken thereunder, is correctly stated as follows:

"The conveyance by one cotenant of the entire estate gives color of title; and if possession is taken, and the grantee claims title to the whole, it amounts to an ouster of the cotenants, and the possession of the grantee is adverse to them." 1 Am. & Eng. Enc. of Law (2 ed.) p. 806, and numerous authorities there cited.

That rule was recognized by this court in *Brown* v. *Bocquin*, 57 Ark. 97.

On the other hand, the principle is well settled that where a conveyance is executed to a stranger by one tenant in common, purporting to convey only his undivided interest, he becomes a tenant in common with the other tenant (17 Am. & Eng. Enc. of Law (2 ed.) p. 661); and, in order to constitute an ouster, "the tenant out of possession must have actual notice of the adverse holding or the hostile character of the possession must be so openly manifest, that notice on his part will be presumed." 1 Am. & Eng. Enc. of Law (2 ed.) p. 805.

The conveyance to appellant Parsons, being a conveyance only of the undivided interests of some of the tenants in common, falls within the latter rule, and is controlled by the case of *Singer* v. *Naron*, 99 Ark. 446, where we declared the law to be that, "in order for the possession of one tenant in common to be adverse to that of his cotenants, knowledge of his adverse claim must be brought home to them directly or by such notorious acts of an unequivocal character that notice may be presumed."

The case of *Singer* v. *Naron* is strikingly like the present one in that one of the tenants in common disappeared and had been absent for a long time, and returned to claim his interest after his cotenants, supposing him to be dead. had openly occupied the property, claiming it as their own, and conveyed away portions of it. We held that the facts of that case presented a question for the jury to determine whether or not there had been an actual ouster by the cotenants and an adverse holding for the statutory period.

Another essential is that there must have been an intention. manifested by overt acts or conduct, on the part of the occupying tenant to claim adversely and in hostility to the rights of the absent cotenant, which may be proved by direct evidence or by circumstances. *Bayles* v. *Daugherty*, 77 Ark. 201; *Goodwin* v. *Garibaldi*, 83 Ark. 74.

The special findings of the circuit judge convince us that he meant to declare the law that the possession of appellees could not amount to an adverse holding because appellant had no actual notice thereof. This was error. The case should have been determined on the question we have herein indicated, and not solely on the question of actual notice.

For the error indicated, the judgment is reversed. and the cause remanded for a new trial.