HARDIN v. TUCKER.

Opinion delivered February 13, 1928.

1. TENANTS IN COMMON—POSSESSION OF ONE TENANT.—The possession of one tenant in common is *prima facie* the possession of all, and the sole enjoyment of rents and profits by him does not necessarily amount to a disseizin.

2. TENANTS IN COMMON—WHEN POSSESSION OF TENANT ADVERSE.—For the possession of one tenant in common to be adverse to that of his cotenants, knowledge of his adverse claim must be brought home to them directly or by such acts that notice may be presumed.

3. TENANTS IN COMMON—EVIDENCE OF ADVERSE POSSESSION.—Where defendants, owning the record title to a five-ninths interest in land as tenants in common, knew that a tenant in common therein had conveyed his interest to plaintiff and permitted the land to forfeit for taxes in 1908 and knew that plaintiff went into possession in 1909, but made no effort to redeem the land from tax sale, and asserted no right thereto until suit was brought in 1926, a finding that plaintiff acquired title by adverse possession was authorized.

Appeal from Benton Chancery Court; *Lee Seamster,* Chancellor; affirmed.

STATEMENT OF FACTS.

Appellee brought this suit in equity against the appellants to quiet title to 102 acres of land in Benton County, Arkansas. The appellants defended the suit on the ground that they were tenants in common with appellees in the land.

The record shows that J. R. Hardin died intestate, owning the land, in May, 1901. He left surviving him his widow and three children as his only heirs at law. Minnie Lowery, one of these children, conveyed by deed her one-ninth interest in said land to the appellee in November, 1909. About the same time F. M. Hardin, a son of one of the children, who had obtained title to a one-third interest in the land from his mother, conveyed his interest to the appellee. This gave appellee the record title to a four-ninths interest in the land in November, 1909, and appellants had the record title to the remaining five-ninths interest. Appellee went into pos-

session of the land, and has held possession of it ever since, paying the taxes on it and claiming it as his own. The land was forfeited to the State in 1908 for the nonpayment of taxes, and in June, 1926, appellee secured a redemption deed from the State to the said land.

The land was very hilly, and had but little commercial value. Very little of it was cleared and in cultivation. Of late years a bathing beach has been established on it by the appellee. Appellee also placed improvements on the land, consisting of a barn and two rooms to the dwelling house, of the aggregate value of $500.

Andrew Hardin, seventy-two years of age, was one of the appellants, and a witness for them. According to his testimony, his father died in 1901, leaving his widow and three children. After their father's death, F. M. Hardin, a grandchild, was permitted to take possession of the land and manage it for the purpose of helping to support his grandmother. The mother of F. M. Hardin conveyed to him her undivided one-third interest in the land.

The chancellor made an express finding of fact to the effect that the appellee had been in the actual and adverse possession of said land for more than seven years, and had obtained title thereto by adverse possession. It was therefore decreed that title to the land should be vested absolutely in appellee, and divested out of appellants. To reverse that decree appellants have duly prosecuted an appeal to this court.

*John D. DeBois,* for appellant.

*Appellee pro se.*

HART, C. J., (after stating the facts). In *Singer* v. *Naron,* 99 Ark. 446, 138 S. W. 958, it was held that, in order for the possession of a tenant in common to be adverse to that of his cotenants, knowledge of his adverse claim must be brought home to them directly or by such notorious acts of unequivocal character that notice may be presumed. The reason is that the possession of one tenant in common is *prima facie* the possession of all, and the sole enjoyment of rents and profits

by him does not necessarily amount to a disseizin. Hence, for the possession of one tenant in common to be adverse to that of his cotenants, knowledge of his adverse claim must be brought home to them directly or by such acts that notice may be presumed. *Oliver* v. *Howie,* 170 Ark. 758, 281 S. W. 17, and *Bowers* v. *Rightsell,* 173 Ark. 788, 294 S. W. 21. Tested by this well-settled principle of law, we do not think it can be said that the finding of the chancellor is against the preponderance of the evidence.

The record shows that J. R. Hardin died owning the land, leaving his widow and three children. By some sort of family arrangement, a grandson of J. R. Hardin was put in possession of the land in order to help support his grandmother. He lived with her and supported her, so far as the record discloses, until she died, a few years thereafter. His mother, who owned a one-third interest in the land, conveyed her interest to him, and a child of a sister of his mother conveyed her one-ninth interest to him, so that he became the owner of a four-ninths interest. After his mother died he conveyed his interest to the appellee. None of the other heirs paid any part of the taxes on the land or asserted ownership in it in any way. They knew that their mother had died and that there was no occasion for the grandson to longer remain in the possession of the land for her benefit. They permitted the land to forfeit for taxes in 1908, after their mother had died. Appellee went into possession of the land in November, 1909, and claimed it as his own until this suit was brought, in June, 1926. During all this time appellants made no effort to redeem the land from the tax sale or to assert any rights in it. It is inferable from the record that they knew that F. M. Hardin had conveyed the land to some one, and that his grantee was in possession of it. Under these circumstances we think the chancellor was justified in finding as a fact that appellee had acquired title to the land by adverse possession.

The decree will therefore be affirmed.