JENKINS *v.* JENKINS.

4-4043

Opinion delivered November 11, 1935.

*J. H. Reynolds,* for appellants.
*Dean, Moore & Brazil,* for appellees.

HUMPHREYS, J. Appellants, heirs of Joshua Jenkins, deceased, brought suit against appellees, also heirs of deceased, in the chancery court of Conway County to partition a tract of land in Conway County consisting of 172 acres between them according to their several interests therein, alleging that Joshua Jenkins was the owner of all of said land at the time he died.

Appellees filed an answer admitting that all the heirs owned the several interests alleged in 152 acres of said tract, but alleged that they owned an undivided one-half interest in the SE¼ of the NE¼, section 31, township 8 north, range 14 west, known as the "gin 40," deraigning title thereto by conveyance from A. C. New, widow of N. B. New, to Robert Jenkins and his father, Joshua Jenkins, in 1904, which deed of conveyance is of record in Book 41 at page 511 of the Records of Conway County, specifically referring to said book and page and making same a part of the answer.

Upon a hearing of the cause, the trial court found and decreed an undivided one-half interest in the "gin 40" to appellees, from which finding and decree an appeal has been duly prosecuted to this court.

Relative to the ownership of the "gin 40," the record reflects as follows:

On December 23, 1902, J. J. Jenkins and George Jenkins entered into a contract with N. B. New to purchase the "gin 40" from N. B. New for $200. J. J. Jenkins concluded he did not want to buy an interest in said 40, so Joshua, his father, took his place and paid New for same and received a deed in 1904 from A. C. New, widow of N. B. New, conveying said 40 to himself and his son, Robert L. Jenkins, who was a party to the original contract of purchase. Joshua Jenkins paid the taxes, occupied and managed all the lands, including said "gin 40," until he died in 1912, after which time all the heirs occupied any portion of it they chose, moving from one part of it to another part thereof from year to year which was not occupied and cultivated by another one of them. No one of them occupied any particular portion thereof to the exclusion of the others for any definite

length of time claiming title thereto. The taxes were paid on the whole tract by various heirs after the death of Joshua Jenkins. Only two acres of the ''gin 40'' were in cultivation, and it had been cultivated by appellees two or three years before the suit was instituted, and by their immediate ancestor, Robert L. Jenkins, before he died. In the year 1929, appellants or some one of them had the A. C. New deed recorded. No effort was made by any or all of them to have the deed reformed. All of the heirs joined in oil leases to said lands.

Appellants contend for a reversal of the decree in awarding appellees an undivided one-half interest in the ''gin 40.'' We think not. The deed from A. C. New to Joshua Jenkins and Robert Jenkins conveyed an undivided one-half interest therein to each of them. Appellants approved and confirmed the recitals of the deed by safely keeping and recording same and by allowing Robert and his descendants to occupy and cultivate it without attorning to them. Appellants argue, however, that they are not estopped to question the recitals in the deed, alleging that the deed is void because A. C. New had no title to the land and had no right to convey same to Joshua and Robert pursuant to a contract made between her husband, N. B. New, and them. The deed recites that she had title thereto and the right to sell same. It may be that she acquired title thereto by will or deed. Her husband could have deeded or willed it to her. There is nothing in the record to show how she acquired title thereto. It is also argued that their ancestor, Joshua Jenkins, acquired title to same as against Robert by adverse possession, but the evidence does not show that he claimed title as against Robert during the time he occupied it and paid the taxes on it. His possession and payment of taxes is not conclusive that he did not make a gift of it to Robert. He had a perfect right to give it to him. Appellants' contention that they acquired title thereto from Robert as well as appellees by adverse possession is not supported by the evidence. According to the decided weight of the testimony, no one of the heirs held any of the lands adversely to the other.

656

This court said in the case of *Singer* v. *Naron*, 99 Ark. 446, 138 S. W. 958, that:

"In order for the possession of a tenant in common to be adverse to that of his co-tenants, knowledge of his adverse claim must be brought home to them directly or by such notorious acts of an unequivocal character that notice may be presumed."

No error appearing, the decree is affirmed.