GARNER *v.* HORNE.

4-9580                  245 S. W. 2d 229

Opinion delivered January 7, 1952.

Rehearing denied February 11, 1952

*Brockman & Brockman* and *Wright, Harrison, Lindsey & Upton,* for appellant.

*Max Smith* and *Reinberger & Eilbott,* for appellee.

ED. F. McFADDIN, Justice. Appellants, as plaintiffs, sought specific performance or damages for failure of the C. W. Horne heirs to convey to appellants a tract of 160 acres on which there was valuable timber. From a decree refusing relief, there is this appeal.

C. W. Horne died intestate, many years ago; and at the time of the matters herein, his heirs were (1) W. D. Horne, a son; (2) Mrs. White, a daughter; (3) Mrs. Odum, a daughter; and (4) Mrs. Seale, (5) John Sinclair, and (6) Norman Sinclair—the last three named being children of Mrs. Sinclair, a daughter of C. W. Horne. As tenants in common, these 6 numbered persons owned the 160-acre tract here involved, and are the

defendants (appellees) along with Van Sadler, whose interest in the litigation will be subsequently discussed.

In the early spring of 1947, C. L. Garner and H. R. Garner, lumbermen trading under the partnership name of C. L. Garner & Son (and hereinafter called "Garner"), undertook to purchase the 160-acre tract owned by the Horne heirs. W. D. Horne lived in California; and after some correspondence he agreed to sell to Garner the land, (which of course included the timber thereon), less one thirty second of the minerals, for the sum of $5,000. W. D. Horne, in writing that he had authority to act for all of his co-tenants, used this language: ". . . I say this because I have the authority as I am administrator of said land".

W. D. Horne did not know the address of his niece and two nephews, who were the three children of his deceased sister, Mrs. Sinclair; and Garner undertook to obtain such addresses from Mrs. White, who lived near Hot Springs, Arkansas. In so doing Garner discovered that Mrs. Odum lived in Florida and that the 3 Sinclair children lived, respectively, in Louisiana, Arizona and Florida. Finally, on May 22, 1947, Garner prepared a deed and sent it to W. D. Horne understanding that all the C. W. Horne heirs would execute the same deed. Garner had a Pine Bluff bank advise W. D. Horne, under date of May 21, 1947:

"You are advised that this bank holds the sum of $5,000 for the purpose of paying the consideration of sale of certain lands in Cleveland County by you, Norman C. Sinclair, John C. Sinclair and wife, Mary Mayfield Sinclair, Alice Sinclair Seale, Grace Odum and Mae White. The deed by them to be properly executed and acknowledged to which you may attach draft in the above sum and forward same to this bank. The purchasers, C. L. Garner, and H. R. Garner, will be promptly notified of the receipt of the deed and upon their advice as to execution by proper parties, check or draft will be forwarded according to said instructions."

W. D. Horne apparently understood that he was to be the last grantor to execute the deed. Accordingly he

forwarded it to Mrs. White, who signed and acknowledged it and returned it to *Garner,* who then sent the deed to Mrs. Seale in Louisiana for execution. What happened to the deed thereafter is a matter of some uncertainty. At all events on June 26, 1947, Mrs. White advised Garner by letter:

"It seems that one of the heirs is holding up the deed to the place. And this morning we had a raise on your bid for the place. Am writing Dossie in this mail; am sorry the delay, but do not have the power to make them."

Mrs. Odum (one of the C. W. Horne heirs) was then visiting in Hot Springs; and both C. L. Garner and H. R. Garner went to Hot Springs, and, on July 3, 1947, had one or more conferences with Mrs. Odum and Mrs. White. The testimony of the participants is in conflict as to what transpired at the conferences. But, at all events, the Garners then received confirmation of the fact that Van Sadler had offered the C. W. Horne heirs a larger sum of money for the land. Sadler, a relative of the Horne heirs, is a lumberman and a competitor of Garner. When Mrs. Seale received the deed sent her by Garner, as aforesaid, she informed her brother, John Sinclair of Florida, about the proposed sale to Garner. John Sinclair immediately wired Garner's attorney for details, who replied under date of June 21, 1947:

"You are advised that Mr. William Dorsey Horne, 1824 East Fourth Street, Apt. 33, Long Beach 4, California, negotiated the sale of the property to C. L. and H. R. Garner, of Rison, Cleveland County, Arkansas, for a consideration of $5,000 cash.

"The agreement to sell provides for deposit of $5,000 with the National Bank of Commerce, of Pine Bluff, Arkansas, to be held by the bank until the deed conveying the lands is properly signed and acknowledged by the owners.

"I have not been advised what pro rata part each heir is to receive of the $5,000, but it is understood, and I have advised the purchasers, that the deed is not to be

delivered until an agreement is reached and signed between the sellers showing the amount each heir, or seller, is to receive.

"I made that requirement, to the end that the purchasers will then be protected, because they will know that the bank forwarded to each interested person the amount agreed upon to be paid to such person.

"If you sign and acknowledge the deed as provided in the deed I would suggest that you immediately take the matter up with Mr. Horne so that the amount coming to you from the sale will be definitely stated.

"I assume that the sellers are willing to accept $5,000 provided each seller receives his pro rata part."

John Sinclair also immediately contacted Van Sadler whom he knew to be interested in purchasing the land. Sadler first "raised the bid" of Garner to $5,250; and finally offered $5,500 for the land and timber with the Horne heirs reserving one-half of the mineral rights instead of one thirty-second as in the proposed Garner transaction. It is clear that when the conferences occurred in Hot Springs in July with Mrs. White and Mrs. Odum, the Garners had already learned that Sadler was trying to purchase the land, because the Garners admit that they then offered the Horne heirs a "bonus of $250" in addition to the $5,000. The Garners learned in those conferences, if they did not already know: (a) that W. D. Horne had never been "Administrator of said land" as he had claimed, and (b) that W. D. Horne was not authorized to act for the other Horne heirs. It is clear that Mrs. Odum and the Sinclair heirs were not on very friendly terms with W. D. Horne. At all events, in the Hot Springs conferences and at all times thereafter, Mrs. Odum disaffirmed all authority of W. D. Horne to speak for her; and Mrs. Odum never signed any deed to the Garners or agreed to sell to them.

Shortly after the Hot Springs conferences the Garners realized that the one-fourth interest in the land owned by the Sinclair heirs could not be acquired by the Garners, so they prepared a deed for the remaining three-fourths interest,—i. e. the interests belonging to W. D.

Horne, Mrs. White and Mrs. Odum,—and forwarded such deed to some one of the three for execution. As to what happened to that deed, the record is silent; and no copy of the deed is in the transcript. It is clear that Sadler knew all along that he was buying lands which the Garners were trying to buy.

At all events the duly executed deed of all of the C. W. Horne heirs was delivered to Sadler November 14, 1947, and duly placed of record and payment made direct to each of the six C. W. Horne heirs. On November 24, 1947, after the said deed had been recorded, Garner filed this suit against the C. W. Horne heirs and Van Sadler. The complaint was styled "Complaint for Specific Performance", and prayed, *inter alia*:

". . . that the defendants and each of them be enjoined from disposing of said property; that the deed, made, executed and delivered to Van Sadler by his co-defendants be cancelled, set aside and held for naught, and that said defendants be required by this Court to accept said purchase money and to execute and deliver to plaintiff a conveyance of said property in accordance with the contract heretofore entered into. That in case the Court does not enjoin the defendants from cutting and disposing of said timber that they and the said Van Sadler be required to respond in damages to the plaintiffs to the amount of three times the market value of all timber cut and removed from said land."

While the suit was pending Sadler cut and removed the timber from the land; and on April 17, 1950, the Garners filed an amendment to the complaint setting up such fact and praying, *inter alia*:

"That upon final hearing, the plaintiffs have judgment as prayed in the original complaint, or if the court should determine that the defendants have placed themselves in position that they cannot carry out the terms of said contract of sale, then that these plaintiffs have judgment for damages for all sums as shown by the proof, and for other general and proper relief."

All defendants have entered their appearance except W. D. Horne, Mrs. Seale and Norman Sinclair; and each

of these has been served by warning order. The Chancery Court refused the Garners all relief, and they now prosecute this appeal.

I. *The Sinclair Interest.* As to the one-fourth interest of the three Sinclair heirs, appellants frankly concede that they are entitled to no relief. So we forego any discussion of that interest; and affirm as to it.

II. *Mrs. Odum's Interest.* As to Mrs. Odum's one-fourth interest, little need be said. She did not agree to sell her interest to the Garners and did not sign any papers to them, and she disavowed any power of W. D. Horne to act for her. In the record in this case we cannot find facts sufficient to support any application of "agency by estoppel", as urged by appellants; so we affirm as to Mrs. Odum's interest.

III. *Mrs. White's Interest.* As to the one-fourth interest of Mrs. White the case is not so easy, but turns on the collective effect of three points; (1) the indivisibility of the Garner contract; (2) Mrs. White's intentions and understandings; and (3) the failure of the Garners to pay her for the deed she sent them. When we consider the letter the bank wrote W. D. Horne, and the letter Garner's attorney wrote John Sinclair (both heretofore copied), it is reasonably clear that the Garners started out in the spring of 1947 to purchase the entire 160-acre tract, and not merely the interest of some of the heirs. Such was undoubtedly the situation until after the Hot Springs conferences of July 3, 1947. Thus, what Mrs. White signed was a deed dependent upon *all* the other co-tenants signing. Mrs. White executed and acknowledged the deed and returned it to the Garners. They did not send her the one-fourth of the $5,000 to which she was entitled: rather they sent the deed to another one of the heirs for execution. Evidently, *at that time,* the Garners believed that the contract of conveyance was indivisible.

The Garners received the deed from Mrs. White on approximately May 30, 1947. She wrote them on June 26, 1947, that she could not force the others to sign. Then

at the conferences in Hot Springs on July 3rd, regardless of the conflict in versions, the fact remains that the Garners did not offer Mrs. White her one-fourth of the $5,000 consideration for the deed that she had signed purporting to convey her one-fourth interest. She had done all she could do:—that is, she had executed and acknowledged the deed and sent it to the Garners in June. They did not offer her payment for her one-fourth interest. She was not required to wait indefinitely to get the deed executed by the others. She was only required to wait a reasonable time. In 26 C. J. S. 489 the rule is stated:

"*Where time is not specified.* If a deed is silent as to the time of performance, the law will imply that performance must be within a reasonable time. What constitutes a reasonable time depends on the subject matter, the nature of the act to be performed, and the situation of the parties.*"*

The deed from the C. W. Horne heirs to Van Sadler is in the transcript and discloses that it was not until October 13, 1947, that Mrs. White executed and acknowledged the deed to Van Sadler. This was after she had learned that Mrs. Odum and the Sinclair heirs would not sell to Garner. Mrs. White honestly believed, as she at all times stated, that the deed to Garner was to be of no force until *all* of the C. W. Horne heirs executed the deed. In view of all the facts, we think it would be against sound equitable rules for the Garners to recover against Mrs. White, who was the only one of the C. W. Horne heirs who actually signed and acknowledged the deed. She exemplified a willingness to sell, but the Garners did not deliver to her the portion of the money to which she was entitled. As to her, the Garners have acted without equity; and the decree is affirmed as to her interest.

IV. *W. D. Horne's Interest.* As to the one-fourth interest of W. D. Horne the case is most difficult. Appellants urge with great force that W. D. Horne positively agreed to sell; that he is bound by his promise; and that even though the others would not sell still as against W. D. Horne the appellants are entitled to specific per-

formance with abatement. Appellants cite, *inter alia*: *Meek* v. *Walthall*, 20 Ark. 648; *Osborne* v. *Fairley*, 138 Ark. 433, 211 S. W. 917; *Sebold* v. *Williamson*, 203 Ark. 741, 158 S. W. 2d 667; also Am. Jur. 123; 58 C. J. 901; and the annotation in 154 A. L. R. 767, entitled "Contract to sell land not signed by all of co-owners as operative to cover interest of the signers". To these might be added: *Bonner* v. *Little*, 38 Ark. 397; *Moore* v. *Gariglietti*, 228 Ill. 143, 81 N. E. 826, 10 A. & E. Ann. Cas. 560, with note following case in last cited volume; *Villarreal* v. *De-Montalvo* (Tex. Civ. App.) 231 S. W. 2d 964; and *Eppstein* v. *Kuhn*, 225 Ill. 115, 80 N. E. 80, 10 L. R. A., N. S. 117, and case note following case in last cited volume. Appellants further insist, under authority of *Meek* v. *Walthall* (*supra*), that since Van Sadler purchased the W. D. Horne interest, with notice, the appellants are entitled to full relief from Van Sadler against the one-fourth interest of W. D. Horne even though the latter be a non-resident.

In *Meek* v. *Walthall*, 20 Ark. 648, a tract of land was owned by the Fogle heirs; and certain of them entered into a written contract with Walthall to convey the land to him for $700. One of the heirs so signing with Walthall was a minor owning a one-seventh interest, who promptly disaffirmed the contract. Another heir owning one-seventh interest refused to sign the contract with Walthall. Thereupon, the other Fogle heirs who had signed with Walthall, claiming that such disaffirmance by the minor and refusal by the other heir released all Fogle heirs from the Walthall contract, conveyed the lands to Meek, "who purchased with full notice". Walthall sued the adult Fogle heirs who had signed with him, and also Meek, for specific performance with abatement. The lower Court held that Walthall upon tendering five-sevenths of the total consideration of $700 was entitled to receive, direct from Meek, the title he had received of the five-sevenths interest of those adult Fogle heirs who had contracted with Walthall. In affirming the lower Court we said:

"Here the appellee asked the performance of the entire contract, and not a part of it. It is true that he

sought to recover the whole of the land, and failed as to the seventh part, owned by Nancy Fogle, because she was an infant when she signed the contract; and as to the seventh part owned by *Gillis and wife,* because they were not bound by the contract; but this was no good reason why he should not recover the five-sevenths of the land owned by Battice Fogle and John Fogle, upon whom the contract for the conveyance was binding. As to them he sought and obtained the enforcement of the entire contract, and not a part of it. They were the owners of five-sevenths of the land. They contracted to sell and convey their interest in the land to him. They afterwards sold and conveyed it to appellant, who had notice of their contract with appellee. As against them, and the appellant who purchased with notice, the appellee was clearly entitled to a specific performance of the contract.''

The doctrine of ''indivisibility of contract'' affords no support to W. D. Horne because he represented to Garner that he had power to speak for all of the heirs. His letter of April 26, 1947, to Garner said:

''If you are willing to accept the offer as I have above mentioned, you may go ahead and have the deed made out and send same to me so that my sisters and I may sign it, as they hold an interest in the property. Then when the bank in Rison, Arkansas, notifys me that they have the draft for $5,000 made out to my credit, I will release the signed deeds to them. After you have done this I will give you permission to go ahead and cut the timber, until I can send deed to my sisters in Florida and Arkansas for their signatures, I say this because I have the authority as I am administrator of said land.''

We have an abiding feeling that W. D. Horne's representation—''I am administrator of said land''—was the primary cause of this entire litigation; because that statement lulled Garner into false security as to the enforceability of the contract, and the knowledge of W. D. Horne's overstatement of his authority was not brought home to Garner until Sadler—Garner's competitor—had obtained substantial advantages. The difference in re-

sults, as between Mrs. White and W. D. Horne, is because of the difference in the representations, conduct and understanding of the two persons. W. D. Horne represented that he had authority to act for all; Mrs. White frankly advised Garner by letter that she could not compel the others to act. Mrs. White tendered to Garner a deed which was not intended to pass title until it was executed by all of the C. W. Horne heirs. Thereafter she waited what was under the circumstances, more than a reasonable time before conveying to Sadler. W. D. Horne did not offer any deed to Garner to carry out the contract. Even when Garner prepared and sent to W. D. Horne the deed for the three-fourths interest as requested by Horne, neverthless Horne failed to execute such deed or return it to Garner. Instead: Horne, on October 25, 1947, executed and acknowledged the deed to Van Sadler. Garner tried every reasonable way to get W. D. Horne to execute a deed to him in accordance with W. D. Horne's contract. All of this Horne failed to do.

Even though Horne is a non-resident and is brought into this case by constructive service only, nevertheless the interest of W. D. Horne now owned by Van Sadler, is subject to the full power of this court under the authority of *Meek* v. *Walthall* as previously discussed.

The holding in *Meek* v. *Walthall* fits the case at bar and results in Garner acquiring W. D. Horne's one-fourth interest in the land (less one one hundred twenty eighth mineral interest) by delivering to Van Sadler $1,250, and Sadler then being compelled by the court to execute a deed to Garner for the W. D. Horne interest. Sadler, having purchased with knowledge, is obligated to respond in actual damages to Garner for one-fourth of the value of the timber cut and removed from the land. For the determination of such amount and for the carrying out of this decree the cause is remanded to the Chancery Court. The costs of this appeal are divided three-fourths against Garner and one-fourth against Van Sadler.

GEORGE ROSE SMITH and ROBINSON, JJ., dissent as to reversal.

ROBINSON, J., dissenting. I do not believe the preponderance of the evidence proves that Garner agreed to accept anything less than the whole. The evidence is not sufficient to show that Horne ever received any notice to the effect that Garner would accept a deed conveying only Horne's one-fourth interest in the land. In fact, Horne had every reason to believe that Garner would not accept a deed from only Horne. Mr. Hogg, vice-president of the National Bank of Commerce in Pine Bluff, had written Horne as follows:

"You are advised that this bank holds the sum of $5,000 for the purpose of paying the consideration of sale of certain lands in Cleveland County by you, Norman C. Sinclair, John C. Sinclair and wife, Mary Mayfield Sinclair, Alice Sinclair Seale, Grace Odum and Mae White. The deed by them to be properly executed and acknowledged to which you may attach draft in the above sum and forward same to this bank.

"The purchasers, C. L. Garner and H. R. Garner will be promptly notified of the receipt of the deed and upon their advice as to execution by proper parties, check or draft will be forwarded according to said instructions."

On August 14th Mr. Horne wrote to Garner's attorney as follows:

"Yours of July 16, 1947, was awaiting me when I returned to Long Beach this week. There was also a letter from John A. Sinclair of Jacksonville, Florida.

"Mr. Sinclair seems to be the one who is holding up the deal negotiated between Mr. Garner, my sisters Mrs. S. C. White and Mrs. Grace Odum, and myself. It seems that when the deed that Mr. Garner had drawn up, was sent to Mr. Sinclair for his signature that he refused to sign because he had been made an offer of $250 more than Mr. Garner & Son had offered. Mr. Sinclair is holding the deed now, so my sister writes me.

"Just what steps should I take to clear the matter? I am willing to keep my agreement with Mr. Garner but

can do nothing without Sinclair's signature as he is a nephew and he and his sister and brother are entitled to their deceased mother's (my sister's) share of the land which would be, one-fourth of same. Their one-fourth interest would have to be divided between the three of them. The other three-fourths would be equally divided between my two sisters and myself as the land was left us by our father, so please let me know if I can close the matter without the signatures of my nephews and niece. If it can be closed this way we can get the deal settled right away as I am willing to sign the deed over to Mr. Garner. My sisters, Mrs. White and Odum have all ready signed it."

It is claimed that after it was ascertained that a deed could not be obtained from the Sinclair heirs, a deed was mailed to Horne, Mrs. White and Mrs. Odum to sign, conveying their interest to Garner, but the evidence on this point is not convincing. The record does not contain copy of any letter accompanying such deed. Garner's testimony on that point is too indefinite for a finding to be made that a second deed was mailed. Following is Garner's testimony in that respect:

Q. Did you forward him a deed to have he and his two sisters sign leaving the Sinclairs out?

A. As I recall we did.

Q. When was that?

A. I don't recall the date of that. It was sometime after August I presume because that letter is dated August 14th.

Q. Did you instruct the bank that since the deed hadn't been paid that upon receipt of a deed signed by Mr. Horne and his two sisters to remit to them their pro rata share of the $5,000?

A. As I recall we instructed the bank to do that. I didn't write them, if I instructed them to do that it was a verbal instruction.

Q. You don't have a copy of that letter in your file that you wrote Mr. Horne in response to his letter that you just read do you?

A. Mr. Brockman has a letter, — I don't know whether he has a copy or not.

MR. REINBERGER: Have you got a copy of the letter in your files?

MR. BROCKMAN: I don't seem to have it here. It may be in Mr. Garner's files.

Q. (Mr. Reinberger, continuing) Is there anything in your files, Mr. Garner, indicating Mr. Horne ever received any such deed?

A. I will have to refer to my files.

\* \* \* \* \*

Garner does not unequivocally testify that a second deed was ever mailed. But, even so, it required the signatures of Mrs. White and Mrs. Odom in addition to that of Horne. Horne had offered to convey his part on August 14th. Since he had received no request for a deed to his part, he had every right to believe that, because the Garners could not get a deed to the whole, they did not want a deed for just his part. It was not until November that Horne conveyed to Van Sadler. Of course, Horne was not in a position to force Garner to buy Horne's one-fourth interest. The Complaint shows that, at the time of the filing thereof, Garner was contending for the whole. There was no alternative prayer asking that the individuals, as such, be compelled to convey their interest.

Therefore, I respectfully dissent from that part of the majority opinion reversing the Chancellor.