GRIFFIN v. SOLOMON.

5-2844                                     362 S. W. 2d 707

Opinion delivered December 17, 1962.

*A. M. Coates,* for appellant.

*David Solomon,* for appellee.

ED. F. MCFADDIN, Associate Justice. The appellants were cotenants with Arthur Cotton, Jr. He mortgaged the lands to the appellees; and the Chancery Court held that

such mortgage gave the appellees a lien on appellants' interests. This appeal challenges that decree.

On October 20, 1938 Arthur Cotton, Sr. made application to the State of Arkansas to receive a donation deed[1] to a tract of 80 acres in Phillips County, Arkansas, and hereinafter called "the land." Cotton, with his wife and five children moved on the land, complied with the requirements of the law, and received a deed from the State on February 19, 1941. In the application to the State in 1938, and in the deed from the State in 1941, the name of the applicant and grantee was "Arthur Cotton"; and it is clearly shown that the said Arthur Cotton was in 1938 a Negro man, 56 years of age,[2] and that he had a son named Arthur Cotton (hereinafter sometimes called "Arthur Cotton, Jr.")[3] who was twenty years of age in 1938. It is the identity of name of the father and son which misled the appellees and caused the confusion which resulted in this litigation. For clarity, we refer to these as "Arthur Cotton, Jr." and "Arthur Cotton, Sr."; although in all the conveyances herein mentioned the name of said party, either as grantor or grantee, was merely "Arthur Cotton."

The wife of Arthur Cotton, Sr. died in 1946; and Arthur Cotton, Sr. died on June 8, 1948, while occupying the land. He was survived by five children, being: (1) Arthur Cotton, Jr., a son; (2) Quincy Cotton, a son; (3) Elijah Cotton, a son; (4) Cora Cotton Griffin, a daughter; and (5) Elizabeth Cotton Snowden, a daughter. All of these five children are of full age; and the last named four are the appellants. After the death of his father, Arthur Cotton, Jr. returned from Michigan and occupied and farmed the lands. For a short time, his two brothers, Quincy and Elijah, were also on the land, but Quincy soon moved, and in 1950 Elijah also moved; so only Arthur Cotton, Jr. re-

[1] This was under the Act approved April 4, 1887—as amended— and contained in § 8636 et seq. Pope's Digest of 1937. The present statute is § 10-905 et seq. Ark. Stats., which contains the more recent Act No. 331 of 1939.

[2] The death certificate of Arthur Cotton, Sr. shows that he was born on May 8, 1882, and died on June 8, 1948.

[3] The testimony of Arthur Cotton, Jr. gives the date of his birth as November 2, 1918; and his marriage certificate in 1950 shows he was then 31 years of age.

mained on the land, occupying and farming it under a claimed agreement with his cotenants that he would maintain the improvements, and pay the taxes. At some irregular intervals he paid some of his cotenants amounts said to be rent.

While so occupying the lands, Arthur Cotton, Jr. (listing himself merely as "Arthur Cotton") joined with his wife, Annie Mae, executed the following instruments, each of which was duly recorded:

(1) On October 5, 1955 Arthur Cotton and wife executed a right-of-way deed to Beaver Bayou Drainage District, conveying a right-of-way over the lands.

(2) On June 21, 1955 Arthur Cotton and wife executed a deed of trust to L. K. Grauman to secure an indebtedness of $550.00, which was satisfied in 1956 from the proceeds of the next mentioned transaction.

(3) On January 11, 1956 Arthur Cotton and wife executed a deed of trust to the Helena National Bank to secure an indebtedness of $1,000.00, which was satisfied from the proceeds of the next mentioned transaction.

(4) On January 25, 1957 Arthur Cotton and wife executed a deed of trust to L. K. Grauman to secure an indebtedness of $1,182.90, which was satisfied in 1959 from the proceeds of the next mentioned transaction.

(5) On April 11, 1959 Arthur Cotton and wife executed a deed of trust to B. M. Solomon to secure an indebtedness of $2,000.00 and other advances; and this is the instrument that the appellees are seeking to foreclose.

In each of the instruments numbered 2 to 4 inclusive, Arthur Cotton and wife mortgaged the entire land and warranted the entire title to the grantee. Furthermore, Arthur Cotton obtained redemption deeds from tax sales and improvement delinquencies, either expressly or impliedly representing himself as the owner of the land. On January 14, 1961 B. M. Solomon *et al.,* the present appellees, filed this suit to foreclose the April 11, 1959 deed of trust, as above mentioned; and "Arthur Cotton and his

wife, Annie Mae Cotton,'' were listed as the only defendants. Their answer was that they owned only an undivided one-fifth interest in the land and that the other four-fifths interests were owned by his cotenants, being the appellants in this case. The appellants, Elijah Cotton, Quincy Cotton, Cora Cotton Griffin, and Elizabeth Cotton Snowden, intervened and claimed that each owned an undivided one-fifth interest in the land; that Arthur Cotton, their cotenant, only owned one-fifth interest and had no right to encumber any interest in the lands except his one-fifth interest. To this intervention, the appellees responded:

''If the intervenors are the owners of 4/5ths of the lands described, it is at least rather peculiar that they now assert their claim in a suit for a past due debt when Arthur Cotton and his wife have executed deeds of trust on such lands on four occasions and executed a perpetual right of way.

''Plaintiffs deny that the intervenors have any interest in such lands, but allege that if they have, then they are estopped from asserting such claim due to laches, negligence in the manner in which the land has been handled in that Arthur Cotton has been permitted by them to use the land as his own, and the intervenors knew, or should have known, that if they owned the interest in the land they have assisted and participated by their silence and failure to act in permitting Arthur Cotton and his wife to falsely and fraudulently procure loans in his and his wife's name on deeds of trust on such lands as if the lands were his own.''

Trial in the Chancery Court resulted in a decree in favor of the appellees, holding that the interest of each of the four appellants was subject to the lien and indebtedness claimed by the appellees; and this appeal is by appellants to reverse that decree.

A careful study has failed to reveal a sound basis on which to rest an affirmance of the Chancery decree. When Arthur Cotton, Sr. died intestate in 1948 as the owner of the lands, the title descended to his five children, who became cotenants (§ 50-411 Ark. Stats. and *Sanders* v. *San-*

*ders,* 145 Ark. 188, 224 S. W. 732). Mere lapse of time does not dissolve a cotenancy. *Hollaway* v. *Berenzen,* 208 Ark. 849, 188 S. W. 2d 298. Arthur Cotton, Jr. testified positively and unequivocally that he never held the land adversely to his cotenants. But even if his testimony should be disbelieved, nevertheless the appellees failed to show any acts by Arthur Cotton, Jr. which would amount to a disseizin of his cotenants. In *Hardin* v. *Tucker,* 176 Ark. 225, 3 S. W. 2d 11, we said:

"In *Singer* v. *Naron,* 99 Ark. 446, 138 S. W. 958, it was held that, in order for the possession of a tenant in common to be adverse to that of his cotenants, knowledge of his adverse claim must be brought home to them directly or by such notorious acts of unequivocal character that notice may be presumed. The reason is that the possession of one tenant in common is *prima facie* the possession of all, and the sole enjoyment of rents and profits by him does not necessarily amount to a disseizin. Hence, for the possession of one tenant in common to be adverse to that of his cotenants, knowledge of his adverse claim must be brought home to them directly or by such acts that notice may be presumed."

The fact that Arthur Cotton, Jr. encumbered the entire title in the instruments heretofore listed, did not *ipso facto* encumber the appellants' interests. *Friar* v. *Baldridge,* 91 Ark. 133, 120 S. W. 989. In *Garner* v. *Horne,* 219 Ark. 762, 245 S. W. 2d 229, in affirming the holding of the Trial Court that the interest of a nonsigning cotenant was not lost, we said:

"As to Mrs. Odum's one-fourth interest, little need be said. She did not agree to sell her interest to the Garners and did not sign any papers to them, and she disavowed any power of W. D. Horne to act for her. In the record in this case we cannot find facts sufficient to support any application of 'agency by estoppel', as urged by appellants; so we affirm as to Mrs. Odum's interest."

In their response to the intervention, the appellees claimed—as heretofore copied—that the appellants were guilty of negligence and laches, and also were barred by

estoppel; but we find no evidence or applicable rule of law or equity to support any of these pleas. As to negligence and laches, mere lapse of time does not dissolve a cotenancy *(Hollaway v. Berenzen, supra)*. It is not negligence for one cotenant to allow another cotenant to occupy the land; and that is the extent of the evidence against the appellants. Arthur Cotton, Jr. never surrendered possession to any third person so as to make applicable cases such as *Parsons v. Sharpe,* 102 Ark. 611, 145 S. W. 537. The case of *Singer v. Naron,* 99 Ark. 446, 138 S. W. 958, is one involving cotenancy. The plaintiff, A. J. Singer, left Arkansas in 1878, and in 1895 his cotenants, assuming him to be dead, divided the land between themselves and executed partition deeds, which were recorded. When A. J. Singer sought to recover his interest in the land, the Trial Court instructed the jury that the partition deeds, *being recorded,* were notice to A. J. Singer that there were claims adverse to his interest. In holding such instruction to be erroneous this Court said:

''After the plaintiff's brother and sisters made partition of the land in 1895 and each one went into possession of his allotted share, they executed mutual deeds to each other. Some of these deeds were filed for record, and the court instructed the jury that placing the deeds in the recorder's office for record was notice to the plaintiff of the execution of the deeds. This was error. Both the plaintiff and the defendants, who are his brothers and sisters, derived title to the land as heirs of their deceased father. These partition deeds were not in the line of plaintiff's title, and he was not required to look for them. *Rosell v. Chicago Mill & Lumber Co.,* 76 Ark. 525; *Turman v. Sanford,* 69 Ark. 95.''

The appellees, likewise, have failed to establish any estoppel. That Arthur Cotton, Jr. used the identity of names to deceive the appellees is rather clearly shown; but there is no evidence that the appellants knew of such deceit or in any way participated in it. Since the appellants did not know that Arthur Cotton, Jr. was encumbering the entire title, they cannot be held responsible for the fact that the appellees believed Arthur Cotton, Jr. to be the

owner. In *Pettit-Galloway Co.* v. *Womack,* 167 Ark. 356, 268 S. W. 353, we said:

"In other words, to constitute silence an estoppel, there must be both the opportunity and the duty to speak, and the action of the person asserting the estoppel must be the natural result of the silence, and the party maintaining silence must be in a situation to know that some one is relying thereon to his detriment."

It therefore follows that the decree of the Chancery Court is reversed and the cause is remanded, with directions to set aside the decree heretofore rendered and have further proceedings not inconsistent with this opinion. It is indicated in the record that some of the funds obtained from the various mortgages or deeds of trust executed by Arthur Cotton, Jr. were used to pay taxes and special assessments. By subrogation, the appellees may have a lien on the interests of the appellants in the lands for their proportionate amounts of such taxes and special assessments. If so desired, the appellees may establish such amounts in the Chancery Court. Aside from these items, the appellees have no lien on the interests of the appellants in the lands.