ZACKERY *v.* WARMACK.

4-8594                                                    212 S. W. 2d 706

Opinion delivered July 5, 1948.

L. L. *Mitchell* and *H. H. McKenzie,* for appellant.

*McRae & Tompkins,* for appellee.

MINOR W. MILLWEE, Justice.  At the time of her death intestate about the year 1919, Fannie Mixon was the owner of a 40-acre tract of land in Nevada county, Arkansas.  She left surviving her the appellant, John Zackery, and five other children as her sole heirs at law.

On May 20, 1920, Rufus Zackery, one of the children, conveyed his interest in the land to John Zackery, Dock Zackery, Alfred Zackery, Annette Sterling and Mary Ellen Leake, his five brothers and sisters.  The general taxes for the year 1929 were not paid and appellant, John Zackery, purchased the land at the 1930 tax sale.  He received a clerk's tax deed on March 31, 1937, and has since paid taxes each year until, and including, the year 1945.

Alfred Zackery died intestate without issue in 1943. Rufus Zackery died intestate in 1944 leaving 10 children as his sole heirs, and Annette Sterling died intestate in 1945 survived by eight children.

Appellee, J. B. Warmack, filed this suit on July 8, 1947, against all the heirs of Fannie Mixon, deceased,

except Dock Zackery. He alleged that he was the owner of an eighteen-fortieths interest in the land by virtue of warranty deeds from Pat Robinson and wife and Dock Zackery and wife, executed in March, 1947; that the tax sale and deed to appellant based thereon were void and the procurement of said deed by appellant was merely a redemption for the benefit of his relatives and tenants in common; that appellant was wrongfully claiming full title to the lands and cutting and removing the timber therefrom. Appellee prayed that the interests of the respective owners be fixed and the land sold for the purpose of partition; that judgment also be rendered for the value of the timber cut by appellant and that the amount of such judgment be charged against his interest in the land.

No defense was interposed by any of the defendants except appellant, John Zackery, who filed an answer and cross complaint alleging that he acquired full title to the land under his tax deed and the payment of taxes for the years 1930 to 1945, inclusive, under claim of ownership against the other heirs of Fannie Mixon, deceased, and all parties claiming through them. Appellant prayed that the deeds from Pat Robinson and Dock Zackery to appellee be cancelled and that his title to all the land be quieted.

Trial resulted in a decree in favor of appellee ordering sale of the lands for the purpose of partition according to the respective interests of the parties fixed in the decree. The court found that the tax sale and clerk's deed to appellant were void, but that said deed was color of title and constituted a redemption from the tax forfeiture for the benefit of appellant's relatives and tenants in common; that appellant had at all times recognized the interests of the other heirs of Fannie Mixon, and their assigns, and that his possession had never been adverse to them. The decree further found that appellant should be permitted to retain the proceeds of the sale of timber of the value of approximately $83 to reimburse him for taxes paid on the land. The cross complaint of appellant was dismissed and he has appealed.

At the time of Fannie Mixon's death in 1919, a part of the 40-acre tract was in cultivation and appellant rented the lands to a tenant for one year following the death of his mother. The land has since remained wild, unenclosed and unimproved. Appellant is the eldest of the six children of Fannie Mixon and has at all times resided near the property. All the other heirs, except Dock Zackery who lives at Prescott, Arkansas, moved to other counties shortly after their mother's death.

The taxes on the land were apparently paid by appellant in the name of Fannie Mixon from 1919 to 1929. After his purchase at the 1930 tax sale, appellant paid the taxes in his own name until 1945. In March, 1925, he executed a right-of-way deed to the 40-acre tract to the Arkansas Power & Light Company and collected the consideration of $1.00 per pole. In August, 1935, he executed a mineral deed and an oil and gas lease to Earl Morgan and a consideration of $40 is recited in each instrument. In 1937, he sold some timber from the land.

The testimony of appellant is replete with faulty recollection of dates and events and contains conflicting statements on material factual issues. This is no doubt due to his advanced age. On direct examination, he stated that he told all of his brothers and sisters except Dock Zackery that he had purchased the land at the tax sale and was claiming it. On cross-examination, he testified:

"Q. When you bought the land in for that tax forfeiture, you were going to freeze out your brothers and sisters and take it all yourself? A. They did not say anything about it and I did not either. I just bought it in and supposed it was mine. Q. You say they did not say anything about it and you did not either? A. No, it just sold for taxes and I bought it in. I kept it like it was mine for it sold for taxes and I bought it in. Q. Didn't you think you ought to tell them something about it if you were going to claim all the land your mother owned? A. I thought they ought to say something about it. . . . Q. You never told them you were claiming all the land, that they did not have any more claim in the land? A. I did not think I had to tell them that. They knowed it

was forfeited. They knowed somebody bought it in and whoever bought it, it belonged to them. Q. If they knew you had bought it, if they knew their brother had bought it? A. Just like anybody else had bought it. . . . Q. The heirs that were scattered and gone did not know every time you made any transaction down there about that land? A. I don't know whether or not they did. I haven't told them nothing about it."

Appellant did not remember having an understanding with the other heirs that he would pay the taxes with the money received for the right-of-way deed in 1925. Although his brothers and sisters have not lived near the land since he purchased it at the tax sale, he had seen them occasionally when they returned on visits. He produced several witnesses who testified that the tract had been known as the John Zackery land for 15 or 20 years.

Appellee placed in evidence a warranty deed dated April 11, 1939, from Dock Zackery, Annette Sterling, Mary Ellen Leake and Alfred Zackery to Pat Robinson conveying a six-twentieths interest in the land. This deed was recorded May 18, 1939.

Robinson testified that sometime prior to execution of this deed Alfred Zackery, who lived near Lewisville in Lafayette county, employed witness to defend him in a criminal case; that Alfred and his two sisters first executed a mortgage of their interest in the land to secure payment of the attorney's fee and later, along with Dock Zackery, executed the deed. After obtaining the deed Robinson was checking the title and learned that appellant had sold or was attempting to sell timber from the land. He stated that he wrote a letter for his client, Alfred Zackery, to appellant warning him against further cutting of the timber and that Alfred received a reply from appellant about thirty days later in which the latter stated that none of the other heirs had contributed to payment of taxes and that proceeds from the sale of timber were being used for that purpose only. This explanation was satisfactory to all concerned and Robinson withheld the filing of a suit against appellant and a lumber company which had purchased the timber.

Robinson was uncertain whether he got the information about timber cutting from the heirs or from checking the county records. He also stated on cross-examination that it was his recollection that the cutting and sale of timber by appellant occurred before he (Robinson) acquired an interest in the lands.

Dock Zackery testified that after his mother died appellant agreed to keep the taxes paid and to notify the other heirs if he was unable to make such payments; that no such notice was ever received by the other heirs and that appellant was to use the proceeds from the right-of-way deed to the power company in making tax payments. Although he first testified that he learned appellant was claiming the land about 8 or 9 years ago, he later gave the following testimony:

"Q. Did your Brother John ever tell you, at any time, that he owned all that, that he had taken your part of the land? A. He did not tell me that way. He said that he had paid the back taxes. Q. When did he tell you that? A. Three (3) or four (4) years ago. Q. Do you know why he told you that? Did he ever ask you to give him any money or keep the taxes paid? A. No, sir. Q. Three (3) or four (4) years ago he told you he had paid the taxes up? A. He taken the land up. He paid the back taxes. I said, 'How come?' He said that he took it up to keep anybody else from getting it. He said, 'You all are not out of it'."

Dock Zackery conveyed all his interest in the land to appellee by warranty deed dated March 8, 1947, and Pat Robinson executed a similar deed to appellee on March 15, 1947. On March 17, 1947, appellee executed a royalty deed back to Robinson conveying one-fourth of the minerals in the land.

For reversal of the decree it is earnestly insisted by appellant that his payment of taxes on the lands for at least 16 years, together with the several conveyances which he executed, constituted an ouster of his cotenants, thereby vesting the whole title to the land in him by adverse possession; and that the trial court's holding to the contrary is against the preponderance of the evi-

dence. In support of this contention appellant cites several cases holding that payment of taxes for seven consecutive years on wild and unimproved land under color of title constitutes a possession equal to seven years actual adverse possession under the provisions of § 8920, Pope's Digest. In most of the cases cited the question of the cotenancy relationship was not involved.

The principle to be applied in determining whether appellant has acquired the interests of the tenants in common is stated in *Singer* v. *Naron,* 99 Ark. 446, 138 S. W. 958, as follows: ''The reason that the possession of one tenant in common is *prima facie* the possession of all, and that the sole enjoyment of the rents and profits by him does not necessarily amount to a disseizin, is because his acts are susceptible of explanation consistently with the true title. In order, therefore, for the possession of one tenant in common to be adverse to that of his cotenants, knowledge of his adverse claim must be brought home to them directly or by such notorious acts of an unequivocal character that notice may be presumed.'' See, also, *Hill* v. *Cherokee Construction Co.,* 99 Ark. 84, 137 S. W. 553; *Davis* v. *Harrell,* 101 Ark. 230, 142 S. W. 156; *Gibbs* v. *Pace,* 207 Ark. 199, 179 S. W. 2d 690.

It is also well settled that one tenant in common cannot add to, or strengthen, his title by purchasing title to the entire property at a tax sale, and that such purchase merely amounts to a redemption which inures to the benefit of all the tenants and confers no right upon the tenant so purchasing except to demand contribution from his cotenants. *Spikes* v. *Beloate,* 206 Ark. 344, 175 S. W. 2d 579.

In the case of *Jones* v. *Morgan,* 196 Ark. 1153, 121 S. W. 2d 96, cited by appellant, it was held that the chancellor was justified in finding that one tenant in common held land adversely to his cotenants where he lived on the land for 37 years during which time he paid all the taxes, retained the crops, sold timber and made valuable improvements with no complaint from the other cotenants. In the case at bar appellant was not in actual pos-

session of the land. He has made no improvements and there is evidence of certain admissions on his part tending to show that he continued to recognize the rights and interests of his brothers and sisters.

Appellant relies strongly on the case of *Avera* v. *Banks*, 168 Ark. 718, 271 S. W. 970. The facts in that case were that Louis J. Banks died childless and intestate in 1907 owning title to certain lands. His widow had three children by a former marriage, one of whom was the appellant, Avera, and one-half of the land descended to the widow. She died in 1911, and her interest descended to Avera and his two sisters. The sisters conveyed to Avera who acquired a tax deed to the land in 1916 and paid the taxes from 1907 until 1923. At the time of his death Banks owed $275 which was more than the land was worth at the time, and Avera and his mother paid this debt. The appellees in that case were the heirs of Banks and tenants in common with Avera. While it was held that Avera had not acquired the interest of the other cotenants by adverse possession, it was further found that appellees were estopped by laches from maintaining a partition suit. The court stated that the other heirs were not misled by any action on the part of Avera and that there was no excuse whatever shown for their delay in asserting title to the land which had suddenly become valuable on account of the discovery of oil in the neighborhood.

It was further said in the Avera case: ''In this connection it may be stated that M. J. Avera did not take possession of the land by permission of appellees. He occupied no relation of trust or confidence to them, except that he and they owned the land as tenants in common. He acquired his interest by inheritance from his mother, and appellees inherited directly from Louis J. Banks. These facts render appellees guilty of laches in not sooner asserting their rights and making it inequitable to divest numerous purchasers of the rights which they had acquired under their oil and gas leases.''

In the case at bar there has been no substantial increase in the value of the land since the death of Fannie

Mixon and there is evidence that appellant assumed the responsibility of making tax payments for the benefit of all the heirs from the sale of timber and other interests in the land. The equities of third parties have not intervened, and such delay as has occurred on the part of other cotenants has worked no serious disadvantage to appellant. While the amount of tax payments is not shown, it is not unreasonable to assume that his receipts from the sale of timber and other interests were considerably in excess of disbursements for taxes. "Laches, in legal significance is not mere delay, but delay that works a disadvantage to another." *Osceola Land Co.* v. *Henderson,* 81 Ark. 432, 100 S. W. 896.

The testimony of Dock Zackery and Pat Robinson indicates that appellant recognized the interests of the other cotenants and that he was not holding adversely to them. Appellant argues that this testimony is unreasonable and fallacious. The chancellor apparently did not so regard it. He saw and heard all the witnesses and was in a more favorable position to properly appraise and weigh the testimony than is this court on appeal. *Murphy* v. *Osborne,* 211 Ark. 319, 200 S. W. 2d 517. We cannot say that his finding—that the acts and conduct of appellant in connection with the lands in controversy did not amount to an ouster of his cotenants—is against the preponderance of the evidence. The decree is, therefore, affirmed.