DODSON *v.* MULDREW

5-3506                                   388 S. W. 2d 90

Opinion Delivered March 22, 1965.

*Pope, Pratt & Shamburger, By Don Ryan and Walter Davidson,* for appellant.

*U. A. Gentry,* for appellee.

SAM ROBINSON, Associate Justice. Appellants' clear and concise statement of the case is as follows:

"This is a proceeding arising out of the condemnation of lands located in North Little Rock by the Urban Renewal Agency of North Little Rock, in which the sole controversy is the right to the proceeds thereof. The lands were formerly owned by one Mary Collier, a common ancestor of all the parties, who died intestate in 1933 survived by four children, named James Collier, John Collier, Louise (Collier) Dodson and Gaines Collier. The Appellee is the illegitimate child of James Collier, deceased, and the sole surviving beneficiary of his will. The Appellants are the children (or their descendants) of Mary Collier.

"The Appellants claim title as co-tenants with the Appellee as descendants of Mary Collier and the Appellee claims title through a will of his father and by adverse possession. The Appellee is a minor and claims possession was held adversely by his mother in his behalf.

"Mary Collier acquired the lands in 1920. Prior to her death in 1933, the lands were forfeited to the State for delinquent 1929-30 taxes, and were quieted in the State by a Decree entered in 1938. In 1941 a tax deed from the State was made to one W. F. Atwood for $86.63, and in that same year W. F. Atwood quit-claimed the lands to James Collier for a recited consideration of $55.00. James Collier, father of the Appellee, was in possession of the lands upon his death and his common law wife, Cora Muldrew, with her minor son, the Appellee, and other children have remained in continuous possession of the property by living thereon until the property was condemned by the Urban Renewal Agency.

"The issue of the validity of the Will of James Collier was formerly before this Court in the case of *Corean Muldrew, Guardian* v. *Louise Collier Dodson, et al,* 237 Ark. 852, 376 S.W. 2d 672.

"In the proceeding now on appeal the trial court concluded that the parties were not co-tenants, that the appellee took title to the entire property through the will of his father, and that he otherwise held title by adverse possession. The Appellants designated a partial record and listed points to be relied upon and this appeal followed."

It is not necessary to go into the question of whether the purchase by James Collier from W. F. Atwood was a redemption by a co-tenant that inured to the benefit of all co-tenants because we agree with the trial court on the other point that Nathaniel Muldrew has acquired the property by adverse possession by holding through his mother adversely to the co-tenants.

The rule is that before a co-tenant can acquire title by adverse possession, knowledge of his adverse claim must be brought home to his co-tenants directly or by such notorious acts of unequivocal character that notice may be presumed. *Singer* v. *Naron,* 99 Ark. 446, 138 S. W. 958; *Griffin* v. *Solomon,* 235 Ark. 909, 362 S.W. 2d 707. But when it is shown that co-tenants knew, or should have known, that another co-tenant is claiming ownership by

adverse possession, the statute begins to run. *Johnson* v. *James,* 237 Ark. 900, 377 S.W. 2d 44.

There is no question about appellee having possession. The only question is: Was Nathaniel Muldrew's claim of ownership brought home to appellants in such manner that they knew that appellee was claiming ownership of the entire property? The trial court answered the question in the affirmative. We agree.

Appellee and his mother moved onto the property to live with James Collier in 1946 and have lived there since that time. James Collier died on the 19th day of March, 1947, leaving a will in which he devised the property to his two illegitimate children, appellee Nathaniel Muldrew, and his sister, Rosetta Muldrew. The sister died in 1960 without issue. The evidence is convincing that appellants knew that Cora Muldrew was holding the property for her children, claiming that they owned it under the terms of the will of James Collier, who held the record title. Adverse possession can be established in this manner. 2 C.J. S. 517; 1 Am. Jur. 801.

On November 12, 1947, appellants, Louise Dodson, Gaines Collier, Josephine Carter, Ada Tanner, Mary McFarlin, Anna McKinnis, Beatrice Nelson, Verna Nicholson, Ida Moss, Ruby Gentry, Raymond Collier and Otis Collier, filed suit in the Pulaski Chancery Court naming as defendants John Collier, one of the appellants in the case at bar, and appellee herein, Cora Muldrew, mother of Nathaniel and Rosetta Muldrew (illegitimate children of James Collier), alleging that the plaintiffs, along with John Collier, owned the property involved herein; that Cora Muldrew occupied the house on the property and refued to move, notwithstanding that she had no title or interest in the property; and that the two illegitimate children of James Collier, namely Rosetta Muldrew and Nathaniel Muldrew, were devised the interest of the said James Collier in his will. It was asked that a Writ of Assistance be issued requiring the defendant Cora Muldrew to surrender possession of the property.

It was shown in the aforesaid 1947 action that Cora Muldrew is the mother of Nathaniel Muldrew and Rosetta Muldrew (now deceased), the illegitimate children of James Collier, and as mother of these minor children she was holding the property for them; that they claimed title under the will of James Collier. It was shown that James Collier did leave a will in which he devised the property to Nathaniel and his sister, Rosetta.

The allegations contained in the Amended Complaint filed by appellants in 1947, a short time after the death of James Collier, show that appellants knew that James Collier had left a will in which he devised the property to his illegitimate children; that Cora Muldrew was holding the property under the will for the children. The original suit was dismissed. Cora Muldrew did not surrender possession, but continued to hold the property for her illegitimate children. No further attempt was made to dispossess her, or Nathaniel Muldrew, until the case at bar was filed in 1963, some 16 years later. In the meantime, a sufficient period of time had elapsed to give Nathaniel title by adverse possession.

Affirmed.