Clara (Girardot) DERRYBERRY *v.* Russell SIMS et ux

CA 79-158 591 S.W. 2d 662

Opinion delivered December 5, 1979
Released for publication January 9, 1980

*Gardner & Gardner,* for appellants.

*Bullock & McCormick,* for appellees.

DAVID NEWBERN, Judge. In this quiet title suit, a rather complicated set of facts presents a simple question. Does the filing of a complaint to quiet title on the basis of adverse possession satisfy the requirement of actual notice of plaintiff's claim of exclusive ownership to persons claiming to be cotenants? The chancellor held it was sufficient, and we affirm.

---

A. C. Girardot owned the 40 acres in question here. He died intestate and was survived by four daughters and one son. Three of the daughters are the appellants here. The appellees are the successors to the title of the other daughter, Louise Standridge, who filed her complaint to quiet title against her sisters in 1955.

The son of A. C. Girardot, whose name was A. D. Girardot, purchased the land from the state in 1938, after it had been forfeited for delinquent taxes. A. C. Girardot had been dead for several years. Although there is a question whether this purchase by A. D. Girardot amounted to a redemption which would have been for the benefit of himself and the other heirs, as well, we need not answer it in view of our finding that Louise obtained title by adverse possession.

A. D. Girardot conveyed the land to Louise by warranty deed dated December 14, 1940. Louise had been in possession, for a time with her mother and at least one of her sisters, since 1932. The mother died and the sister who had lived on the land, but in a separate house from Louise, left for California in 1952. This left Louise in exclusive possession. The appellants claim her possession was with their permission.

The year before Louise filed her suit to quiet title, she mailed to at least two sisters deeds which would have conveyed their interest in the land to Louise. They refused to execute the deeds, and that apparently precipitated the complaint to quiet title. In her complaint, Louise recited her warranty deed from her brother and her continuous adverse possession for more than 20 years. The appellants filed a motion to require Louise to make her complaint more definite and certain, to which Louise filed a response. The appellants did not, however, answer the complaint or seek any affirmative relief in the case until 1976, some three years after Louise had conveyed the land to others who preceded the appellees in title.

Assuming, without deciding, that the purchase by A. D. Girardot from the state might be considered a redemption on behalf of all the heirs, and thus not sufficient to convey the

entire title to Louise, we are compelled to find Louise's possession from 1955 until 1973 more than sufficient to establish her claim, and thus to establish the claim of the appellees. We recognize that adverse possession claimed against one's cotenants must be based on clear notice to them. *Dodson* v. *Muldrew*, 239 Ark. 202, 388 S.W. 2d 90 (1965); *Staggs* v. *Story*, 220 Ark. 823, 250 S.W. 2d 125 (1952). However, we can think of no more unequivocal way of conveying notice than by filing a suit to quiet title. The filing, in 1955, of the motion to make more definite and certain confirmed that the appellants knew of the suit.

If we were evaluating a motion to dismiss the complaint for failure to prosecute the claim we would be confronted with a very different question from the one presented here. We must keep our attention focused on the fact that Louise was in exclusive possession at the time her complaint was filed. The appellants could have answered the complaint and sought affirmative relief anytime thereafter, but they did not do so until 1976. We have no hesitancy in saying Louise's claimed adverse possession came to fruition at least as early as seven years after her complaint was filed.

Affirmed.

Judges Howard and Penix dissent.

Marian F. Penix, Judge, dissenting. I disagree with the majority decision. A further statement of the facts will aid in understanding the equities involved.

A. C. Girardot owned the land in question. He died in 1931 or 32. His widow and daughter Clara continued living on the homestead. Appellee, Louise Standridge, a widowed daughter, moved in with her mother and Clara. The property went delinquent for taxes. A. D. Girardot, brother of Clara and Louise, redeemed the property from the State of Arkansas. He and his wife deeded the property to Louise Standridge and such deed was recorded in 1944. A year later the mother of Clara, Louise, A.D. and two other daughters, Evelyn Brown and Rena Chilton, died. Clara moved from the property leaving Louise and Louise's children living on the property.

In 1955 Louise filed this action to quiet title. The defendants, three sisters of Louise, filed a Motion to make more Definite and Certain. In April 1955 a Response to that Motion was filed. From that date until 1973 neither the plaintiff nor defendants took any action. In November 1973, Louise deeded the property to Euel and Aileen Hill for $16,500.00. On December 11, 1973, the Hills sold the property to Kenneth and Bessie Childress for $21,000.00. On December 13, 1973, Kenneth and Bessie Childress conveyed the property to the actual purchasers, Russell Sims and Carol Sims, his wife. All of these parties were made party to this cause together with the Bank of Dover which held a mortgage executed by Russell Sims. On February 20, 1976, the appellants filed a Motion to File Pleading, To Add Parties and to Expedite Disposal of Case and also filed a Lis Pendens. On April 29, 1976, the original defendants, the three Girardot sisters, filed an answer and a cross-complaint stating Louise's possession has been at all times permissive and asking that the property be sold and proceeds divided one-fifth to each defendant and two-fifths to Louise — she having received her brother's interest in 1944. The case was tried December 22, 1978. The Court quieted title in the appellee Louise, the original plaintiff. The Court based its decision on adverse possession, and the bars of laches and estoppel.

I

The three sisters, appellants, allege the court erred in establishing Louise, appellee, as owner by adverse possession against them. When the brother redeemed the property from the state the interest in the property remained the same as before the property became delinquent. His interest remained one-fifth.

It is also well settled that one tenant in common cannot add to, or strengthen, his title by purchasing title to the entire property at a tax sale, and that some purchases merely amount to a redemption which inures to the benefit of all the tenants and confers no right upon the tenant so purchasing except to demand contribution from his co-tenants. *Zackery* v. *Warmack,* 213 Ark. 808, 212 S.W. 2d 706 (1948) quoting *Spikes* v. *Beloate,*

206 Ark. 344, 175 S.W. 2d 579 (1943).

See also, *Crouch* v. *Crouch,* 241 Ark. 447, 408 S.W. 2d 495 (1966); *Vesper* v. *Woolsey,* 231 Ark. 782, 332 S.W. 2d 602; *Wright* v. *Curry,* 208 Ark. 816 at 821, 187 S.W. 2d 880 (1945); Jones, *Arkansas Titles* § 220.

When the brother deeded the redeemed property to Louise, she received no more than his one-fifth interest. Thereafter her interest remained two-fifths. There is no question but that Louise remained in possession of the property, but such possession was with the permission of her co-tenants. Before one co-tenant can acquire title by adverse possession from the others, knowledge of the claim must be *brought home* to the co-tenants. From the testimony it is apparent the appellants permitted Louise to live on the property because she was widowed with children, but that they believed her interest to be no more than that which she acquired as an heir. Furthermore, prior to filing suit to quiet title Louise requested her sisters sign deeds conveying their interest to her. The sisters refused. At this point Louise recognized her sisters as co-tenants. In *Dodson* v. *Muldrew,* 239 Ark. 202, 388 S.W. 2d 90 (1965), the court stated that notorious acts of an unequivocal nature were required to give notice to co-tenants of an adverse claim. Possession by one tenant in common is presumed to be the possesison of all and, further, that in view of the family relation stronger evidence of adverse possession is required. Because of the close family relationship of parties, stronger evidence of adverse possession was required than would otherwise be necessary. *Staggs* v. *Story,* 220 Ark. 823, 250 S.W. 2d 125 (1952).

I find no evidence of any notice or notorious acts which would ''bring home'' to the other co-tenants Louise's claim of ownership by adverse possession *prior* to her filing of the lawsuit in 1955 to quiet title in herself. Louise had no cause of action at the date of filing her 1955 lawsuit.

II

Appellants allege the court erred in finding the bars of

laches and estoppel are applicable in this case. In 1955, Louise Standridge gave notice to the world, including her sisters, she was claiming the property as her own. She brought the action to quiet title. The defendant sisters filed a motion to make more definite and certain. A response to that motion was filed. No further action of any kind was taken until February 1976. Rule 10 of the Circuit and Chancery Courts states:

> In all civil cases wherein there has been no action of record during the 12 months just past, the Court shall cause notice to be mailed to the attorneys of record that such case will be dismissed by the Court without prejudice for want of prosecution unless on a day set for that purpose application is made to the Court and good cause shown why it should be continued as a pending case. If such application is not made or good cause is not shown, the court may dismiss each case without prejudice.

The trial court should have dismissed this case. It was incumbent upon that court to make sure the case was either tried or dismissed. This, however, was not done. Filing a lawsuit tolls the Statute of Limitations.

> The actual commencement of a suit is sufficient to stop the running of the Statute of Limitations without any regard to, or dependence upon, any after diligence of the plaintiff in its prosecution. *King & Houston* v. *State Bank,* 13 Ark. 269 (1853).

> Unless a statute of limitation expressly provides otherwise, its operation is ordinarily tolled by the commencement of an action rather than by its prosecution to judgment. *General American Life Insurance Co.* v. *Cox,* 215 Ark. 860, 223 S.W. 2d 775 (1949).

If filing a lawsuit tolls the Statute of Limitations what is equitable or logical about allowing the filing of a lawsuit — which tolls the statute — to begin a new period of limitations?

> The parties did not pursue the lawsuit. There was tes-

timony by the appellants they considered the lawsuit dropped. Neither party availed themselves of the remedies available. Now both are asking that equitable relief be provided.

> The doctrine of laches is founded on the equitable maxims that he who seeks equity must do equity and that equity aids the vigilant, and hence while there is a great variety of cases in which the equitable doctrine is invoked, each case must depend on its own particular circumstances, and courts of equity discourage laches and delay without cause. *Grimes* v. *Carroll,* 217 Ark. 210, 229 S.W. 2d 668 (1950).

Louise, the movant in the action to quiet title, should not be allowed to avail herself of the equitable defense of laches as she has not been vigilant. She did not pursue her lawsuit to its fruition. Furthermore, laches is not generally available to a plaintiff in a lawsuit.

> Laches is generally considered to be a shield of equitable defense rather than a sword for the investiture of legal title. *Meadows* v. *Hardcastle,* 219 Ark. 406, 242 S.W. 2d 710 (1951).

The court in this case has charged the appellants with the burden of carrying forward a suit which they did not initiate. The majority would have us reward Louise for her sisters' lack of diligence when in fact she herself was not diligent. I believe the parties should be left in the same position as they were in 1955. In 1955 Louise and her sisters were co-tenants. Equitable relief should not be granted to either party. Each had the opportunity to seek timely judicial determination of the issue. All parties slumbered on their rights. Equity will not step in to change a situation produced by the actions or inactions of the parties.

> The relationship between co-tenants is one of trust and confidence and it would be inequitable to permit one of them to do anything which prejudiced the interest of the other. *Johnson* v. *Johnson,* 250 Ark. 457, 465 S.W. 2d 309 (1971).

It is not equitable to allow one co-tenant to prejudice the rights of her co-tenants by filing a lawsuit which she never prosecuted to its conclusion. To allow her to establish her claim by adverse possession is unconscionable.

### III

The appellants allege error in the court finding the appellees, Euel Hill and Aileen Hill, Kenneth Childress and Bessie Childress, John A. Sims, Russell Sims and Carol Yvonne Sims were innocent purchasers.

Louise Standridge sold the property to Euel Hill, a real estate broker, who had his attorney examine the abstract of title and render an opinion. Mr. Hill had been a real estate broker for 22 years. He testified he thought the land had gone for taxes but could not say who bought it. He also testified he had no idea there were any heirs. Both abstracts introduced into evidence indicate a tax forfeiture by A. C. Girardot and a subsequent redemption deed to A. D. Girardot. Certainly there is sufficient similarity in this unusual name to put a conscientious purchaser or a title examiner on notice of the possibility of other heirs and that the purchase by A. D. Girardot was nothing more than a redemption of the taxes due and inured to the benefit of all the co-tenants. Record title in A. D. Girardot constituted constructive notice to Euel Hill. A further inquiry would have brought to light the existence of the co-tenants. Mr. Sims, one of the appellees, received a phone call from one of the appellants, Mrs. Brown, telling him there were other heirs to the property.

I find there to have been sufficient notice and information available to the appellees to defeat the contention they were innocent purchasers.

It is my firm belief Louise Standridge did not acquire title by adverse possession but rather continued as a co-tenant. Therefore, in 1973 the only interest she had to convey was her two-fifths.

I would reverse. Therefore, I respectfully dissent.

HOWARD, J., authorizes me to state he joins me in this dissent.