HADFIELD *v.* KITZMANN.

5-292                                        266 S. W. 2d 801

Opinion delivered April 5, 1954.

*Wood & Smith* and *John W. Newman,* for appellant.

*McMillen, Teague & Coates,* for appellee.

GEORGE ROSE SMITH, J. This is a proceeding brought by the appellants, H. P. Hadfield and wife, to obtain partition of certain property that is owned in equal thirds by the appellants, by the appellees Gus Kitzmann and wife, and by the appellee Ruth McMillen. The property consists of five apartment buildings in Little Rock, the buildings being designated as Units 1 to 5. The complaint asked that Units 1, 2, and 3 be divided in kind among the co-owners and that Units 4 and 5 be sold. The chancellor denied this request and ordered instead that all five buildings be sold in bulk. This appeal questions the correctness of that decree and also attacks the order confirming the sale.

In 1949 the Hadfields, the Kitzmanns, and Verne McMillen formed a corporation for the purpose of constructing these buildings, which are known as the Yorkshire Apartments. The venture was largely financed by a loan from the federal government. Each of the three participating interests contributed $10,000 to the project, and a federal loan of $335,000 supplied the remaining funds. At the time of trial this loan had been reduced to about $311,000, so that the owners' equity in the property was still relatively small. In the interim Verne McMillen had transferred his stock to his wife Ruth, and the corporation had conveyed the property to the stockholders and had been dissolved.

Most of the testimony at the trial was directed to the issue of whether Units 1, 2, and 3 are of so nearly equal value that a division in kind would be fair. On this issue the weight of the evidence supports the chancellor's conclusion. The five buildings are situated in a semicircle and are numbered from left to right. The first three buildings contain eight apartments each, while Units 4 and 5 have ten apartments each.

The testimony indicates pretty clearly that Unit 3 is substantially more valuable than Units 1 and 2. It sits

in the center of the semicircle and is architecturally more attractive than the other four structures. It cost about $5,000 more to build than did the other two eight-apartment units. The federal loan was divided into five separate loans, and as of April 30, 1953, the owners' equity in Unit 3 was $13,725.34, while it was only $8,961.76 in Unit 2 and $10,728.19 in Unit 1. Again, during the first four years Unit 2 returned a net profit of $5,130.65, compared to a profit of only $2,558.34 for Unit 1 and $3,955.30 for Unit 3.

Apart from these figures, the various expert opinions offered at the trial are about evenly balanced. There is also much evidence to show that the value of all five buildings would be materially diminished if three were divided in kind and the other two sold. The resulting separate ownerships would entail a loss of economy in management and would leave each proprietor exposed to the threat of rent reductions on the part of someone else. Without reviewing the testimony in greater detail, we think it sufficient to say that the chancellor's decision on the main issue is not contrary to the preponderance of the evidence.

At the commissioner's sale the properties were jointly purchased for $60,000, one third by the Kitzmanns, one third by Ruth McMillen, and one third by J. B. Murphy. Since the Kitzmanns and Mrs. McMillen already owned a two-thirds interest, the actual result of the sale was that Murphy bought the appellants' equity for $20,000. It is now insisted that this price is so grossly inadequate that the sale should not have been confirmed.

We hardly think the price even to be inadequate, much less grossly so. As of April 30, 1953—a few months before the sale—the owners' bookkeeping equity in the five buildings was $61,578.84. The chancellor was scrupulously fair in giving the parties ample opportunity to obtain bids for the property. In taking the case under submission he gave the litigants several months in which to find a buyer. The only offer that was obtained for the entire property was a $65,000 offer made by Murphy.

This offer, however, was for an immediate delivery of title, free from further litigation in the trial or appellate court.

After Murphy's offer was made the Hadfields offered in substance to pay one-fifth thereof, or $13,000, for either Unit 4 or 5. But these are the ten-apartment units and are undoubtedly worth more than the smaller units. Construction costs for Unit 5 were more than $17,000 greater than those for Unit 2. Thus if the Hadfields consider $13,000 to be a fair price for the most valuable of the five buildings, we do not think it can be said that a bid of $60,000 for the whole is grossly inadequate. On this question, too, the opinions of expert witnesses are directly conflicting.

The remaining issue is whether the court erred in directing that the property be offered for sale in bulk rather than first in bulk and then separately, with the better bid to be accepted. The appellants insist that the statute requires distinct buildings to be sold separately. Ark. Stats. 1947, § 34-1829. No request for this procedure was made by anyone before the sale, but the point was relied upon by the Hadfields as an objection to confirmation.

Although it is certainly the better practice for property to be offered alternatively as a whole and in parcels, the objection is not now available to the appellants. The error of offering separate tracts *en masse* is a mere irregularity which does not avoid the sale. *Glasscock* v. *Glasscock*, 98 Ark. 151, 135 S. W. 835. We there held that since the error is not jurisdictional a stranger who purchases under the decree will be protected, even though the decree be subsequently set aside.

As we have seen, all that was actually sold in the case at bar was the Hadfields' one-third interest. The purchaser was Murphy, who is not a party and is therefore entitled to protection. Nor is it material that Murphy was to some extent familiar with the litigation and was aware that an appeal had been taken from the original decree. The appellants failed to supersede that de-

cree and thereby permitted the sale to be held. With reference to this situation we said in *Rankin* v. *Schofield,* 81 Ark. 440, 98 S. W. 674: ''It is well settled, when lands are sold under a valid decree and purchased by one not a party to the proceedings who pays the purchase price and receives a deed to the lands, that the purchaser will be protected in his purchase, even though the decree under which the lands were sold be reversed and set aside on appeal. The mere fact that there were errors in the proceedings leading up to the decree is a matter of no moment, so far as the purchaser is concerned, if the court had jurisdiction of the parties and the subject-matter and power to make the decree. Nor would the case be different if the purchaser had notice of such errors, for otherwise it would not be safe for anyone to purchase at a judicial sale that was liable to be reversed on appeal. For on a reversal it could always be said that by an examination of the record the purchaser could have ascertained the errors. . . . It is sufficient for the purchaser at such a sale to know that the court had jurisdiction and power to order the sale. If the court has power under a decree to order the sale, and a purchaser buys at a sale made under the decree, then, if the sale is confirmed by the court, and the purchaser pays the price and receives a deed, it is immaterial, so far as he is concerned, whether there were errors or not, for his title will not be affected by them. *Moore* v. *Woodall,* 40 Ark. 42; *Boyd* v. *Roane,* 49 Ark. 397 [5 S. W. 704].''

In this case, as in that one, the purchaser has paid the purchase price and the sale has been confirmed, the order reciting that title is divested from the Hadfields and vested in Murphy. The only difference is that here it does not appear that Murphy has yet received a commissioner's deed. This makes no difference, however, for it is the order of confirmation that vests the title, the deed being merely evidence of what was done. *Person* v. *Johnson,* 218 Ark. 117, 235 S. W. 2d 876.

Affirmed.

GRIFFIN SMITH, C. J., not participating.