GEARY *v.* KIRKSEY.

5-2566                    351 S. W. 2d 846

Opinion delivered December 11, 1961.

*Thomas B. Tinnon,* for appellant.

*Roy Danuser* and *W. B. Howard,* for appellee.

JIM JOHNSON, Associate Justice. This is an appeal from a Chancery Court Decree ordering partition by sale of certain lands in Baxter County.

The appellant makes two contentions: (a) The trial court erred in overruling a motion to dismiss appellees' complaint; (2) The evidence did not justify a partition by sale.

Appellants' first argument is based upon an assertion that the appellees had no title and therefore could not maintain the action. This contention is bottomed upon provisions of a contract for the sale of an undivided one-half interest in the lands by persons who are the common source of title of all parties to this appeal. In the motion to dismiss, it was alleged that the interest in the lands claimed by appellees had been conveyed to the appellees' intermediate predecessors in title pursuant to the terms of a contract which contained a covenant that certain work would be done upon the lands. As indicated, this contract was between parties who then owned all the lands in question and parties through whom appellees claimed their undivided one-half interest.

The motion to dismiss contained an allegation that the work had not been done thereby resulting in a failure of consideration. It was then alleged that because of this failure of consideration the appellees' predecessors had lost their title and that for this reason appellees acquired no title.

Appellees meet appellants' first contention with five counter arguments, all of which contain merit. It would unduly extend this opinion to discuss all of appellees'

contentions, therefore we will only treat with the one we find to be the most conclusive, *i.e.,* "Appellants waived any right to question the title of appellees by stipulating upon the trial that appellees owned an undivided one-half interest in the lands in question." Page 31 of the record shows the following stipulation:

"It is stipulated and agreed by and between the plaintiffs Claude Kirksey and Mildred Kirksey, and the defendant James E. Geary that the defendant James E. Geary is the owner of an undivided one-half interest . . . and that the plaintiffs Claude Kirksey and Mildred Kirksey are the owners of an undivided one-half interest in and to the lands described in the complaint and the answer subject to any typographical error." Having so stipulated, it follows that appellant is precluded from questioning the trial court's ruling on the motion to dismiss or to question appellees' title. *Orr* v. *Weaver,* 203 Ark. 1147, 158 S. W. 2d 272.

As to the sufficiency of the evidence to support the decree, we cannot escape the conclusion that the evidence was overwhelmingly in favor of appellees.

An examination of the record shows that the land in question consists of two long narrow strips referred to in the testimony as "runways." These runways intersect each other at an angle of approximately 115 degrees. One runway runs generally north and south, while the other runs generally east and west. The north-south runway is approximately 2,650 feet in length and 150 feet in width. The east-west runway is approximately 2,550 feet in length and 150 feet in width. The east-west runway is considerably closer to Lake Norfork than is the north-south runway.

We find the rule for determination of this evidentiary question aptly stated in *Nutt* v. *Strickland,* 232 Ark. 418, 338 S. W. 2d 193, wherein it is said:

"As we have frequently stated, the Chancellor heard the witnesses, observed their demeanor on the stand and was therefore in a better position to judge

the weight of the evidence. See: *Willis* v. *Denson,* 228 Ark. 145, 306 S. W. 2d 106. The findings of the Chancellor on a fact question, of course, will not be disturbed unless clearly against the preponderance of the evidence.''

Therefore, it would be our duty to affirm even if the evidence were evenly balanced. However, as heretofore indicated, we are of the opinion that the evidence preponderates strongly in favor of appellees. Without going into minute detail, the evidence shows that the land has comparatively little value for farming purposes whereas it has a substantial value for use as airplane landing strips. It is further shown that the land could not, as a practical matter, be utilized for an airport except as a unit because of terrain and changing winds which from time to time would require the use of one strip rather than another. There was other testimony showing that because the east-west runway was closer to the lake, it would have more value than the north-south runway, even if its use for an airport was not considered. There was even testimony that the lands comprising the two strips were unequal in fertility if used for agricultural purposes. The very dimensions of the land in question would militate against an equitable division in kind. This is because the runways are too narrow to be split in the middle and still utilized for landing strips. There was evidence to show that because of inaccessibility the lands had practically no value except as landing strips. The principal appellant impliedly recognized that the highest value of the land was for use as airstrips but stated that the land could be divided in kind without prejudice as to either party. In this latter assertion, he was contradicted by a host of witnesses. Suffice it to say there was ample evidence to justify a finding that the land could not be divided in kind without prejudice to the owners. Our statute (Ark. Stats. § 34-1826) authorizes a sale under these conditions. In 68 C. J. S., Partition, § 127 (E) P. 196, it is said:

''The effect on the value of the property of division in kind is a factor of major importance in determining

whether the land is equitably divisible so as to preclude a sale for partition.''

In *Hadfield* v. *Kitzmann,* 223 Ark. 459, 266 S. W. 2d 801, which was a suit for partition wherein the appellant asserted the land should be divided in kind, we said, in part:

''There is also much evidence to show that the value of all five buildings would be materially diminished if three were divided in kind and the other two sold. The resulting separate ownerships would entail a loss of economy in management and would leave each proprietor exposed to the threat of rent reductions on the part of someone else. Without reviewing the testimony in greater detail, we think it sufficient to say that the Chancellor's decision on the main issue is not contrary to the preponderance of the evidence.''

In applying the law to the evidence on this question, we must agree with the learned Chancellor that equity requires a partition by sale.

Affirmed.