Cite as 2021 Ark. App. 370

# ARKANSAS COURT OF APPEALS
### DIVISION III
**No.** CV-19-278

| | |
|---|---|
| SUPHA XAYPRASITH-MAYS<br><br>APPELLANT/CROSS-APPELLEE<br><br>V.<br><br><br>WILLIAM R. WALLACE<br><br>APPELLEE/CROSS-APPELLANT | **Opinion Delivered** September 29, 2021<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CV-16-1682]<br><br><br>HONORABLE ROBIN F. GREEN, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

## WAYMOND M. BROWN, Judge

This appeal arises from a judgment entered by the Benton County Circuit Court in a partition case filed by appellant, Supha Xayprasith-Mays (Mays), regarding a dispute between the parties as to their respective interests in real property and the manner in which the circuit court ordered allocation of proceeds resulting from the partition sale. Appellee, William Wallace (Wallace), cross-appeals, contending that the circuit court erred when it did not allocate the excess proceeds proportionately to the rights of the parties. The judgment was previously appealed, but we dismissed the case as premature for lack of a final order on October 31, 2018. On January 29, 2019, the circuit court entered an amended judgment that included an Ark. R. Civ. P. 54(b) certification. We find that the Rule 54(b) certificate complies with the Arkansas Rules of Civil Procedure, and therefore we can proceed on the merits.

I. *Background Facts*

In 2006, Wallace purchased three contiguous tracts of real property located in Bentonville, Arkansas: 608 SE A Street; 702 SE A Street; and 704 SE A Street. Wallace secured a loan to purchase the properties at 608 and 704 SE A Street. As part of the loan transaction, Wallace executed a promissory note and mortgage with American Mortgage Associates, Inc., as well as a lien in favor of the lender on the mortgaged properties. The notes and the mortgages were solely in Wallace's name. On September 28, 2006, Wallace conveyed all three properties to both himself and Mays by quitclaim deed. At the time of the conveyance, Wallace and Mays were in a relationship but unmarried. The properties were purchased as an investment and rented out to third parties. On November 1, 2006, the mortgage loans were assigned by American Mortgage Associates, Inc., and transferred to JPMorgan Chase Bank, N.A. (Chase).

The property located at 704 SE A Street became unhabitable due to damages caused by a tenant, and Wallace determined that the financial cost of remedying the property was not beneficial; therefore, the 704 property was left vacant. Wallace testified that the rent from the remaining two properties was not enough to cover the debt with Chase, and he began making up the difference between the loan and the rent received with his personal money. Wallace presented evidence of losses incurred on the mortgages and maintenance on the properties in the amount of $145,229 as well as $15,326 for down payments on the properties. Mays presented documentation at trial evidencing a down payment she made on the properties as well as a payment she made in back taxes on the 702 property totaling $11,423.14.

2

According to testimony, the parties' relationship significantly deteriorated in 2012. On September 22, 2016, Wallace hired legal counsel to send a demand letter to Mays detailing his previous efforts to negotiate an agreement with her to either list the properties for sale or have Mays buy out Wallace's interest in the three properties. Furthermore, the demand articulated that an agreement had to be reached prior to October 15, 2016, if Mays wished to purchase Wallace's interest in the properties in the amount of $210,000. Wallace expressed a strong desire to avoid litigation but indicated he would file suit if necessary.

On November 9, 2016, Mays filed a "Petition for Partition of Tenancy in Common" to divide the land pursuant to Ark. Code Ann. §§ 18-60-401 et seq. (Repl. 2015 & Supp. 2021). Mays listed both Wallace and Chase as defendants. In response, Wallace filed both his answer to the petition and a counterpetition for partition on December 6, 2016. Wallace argued that the properties were more valuable for their location and size rather than the improvements that had been made to them; therefore, he reasoned, division of the properties would result in prejudice to the parties; consequently, they should be sold together as a whole rather than individually.

On March 10, 2017, Wallace and Mays entered into a "Joint Stipulation and Agreed Order of Dismissal Without Prejudice of Separate Defendant, JPMorgan Chase" wherein they agreed Chase held a first mortgage on 608 and 704 SE A Street that was to be fully satisfied first from the proceeds of the sale of each property. Accordingly, the court dismissed Chase from the action without prejudice.

The action was tried before the circuit court on September 20, 2017. Mays testified on her own behalf but presented no other witnesses. Wallace testified on his own behalf

and also presented an expert witness, Richard Weaver, a real estate broker, to testify as to the value of the properties sold together as a whole and individually. The circuit court ordered that Mr. Weaver serve as the real estate broker of the transaction and directed that the parcels be listed at $22 per square foot and authorized to sell at $20 per square foot. Furthermore, the court found credible the expert's advice that it was in the best interest of both parties for the three parcels to be sold "individually but as a condition that the owner or the buyer buys all three at that time."

Regarding the proceeds of the sale, the circuit court ordered as follows: first, Mr. Weaver is to be paid for his services in selling the properties; second, outstanding mortgages in favor of Chase shall be satisfied; third, Wallace is to be reimbursed the $160,556.40 that he put into the parcels, and Mays shall be reimbursed the $11,423.14 that she contributed; finally, the remaining balance divided by two and split equally, except Mays is to pay Wallace's attorney's fees. Judgment was entered on October 16, 2017. Mays filed her notice of appeal on November 2, and Wallace filed his notice of cross-appeal on November 8.

On appeal, Mays argues the following: (1) the circuit court improperly ordered the outstanding balance owed by appellee to Chase to be paid from the proceeds of the sale of the properties in a way that requires appellant to contribute one-half of the outstanding balance even though she is not a party to the notes and, when doing so, contravenes the statute of frauds, codified at Ark. Code Ann. § 4-59-101 (Supp. 2021); (2) requiring Mays to contribute to Wallace's expenses incurred between September 22, 2006, and November 9, 2013, contravenes the statute of limitations, codified at Ark. Code Ann. § 16-56-105

4

(Repl. 2005); (3) the circuit court improperly ordered that the properties be sold in a way that requires any purchasers to buy all three properties simultaneously, thereby violating Ark. Code Ann. § 18-60-420(d)(1) (Repl. 2015); (4) and the circuit court's order that attorney's fees to Wallace's counsel be paid solely from Mays's share of the proceeds violates Ark. Code Ann. § 18-60-419(a)(1) (Repl. 2015).

On cross-appeal, Wallace contends that the circuit court erred when it did not allocate the excess proceeds proportionately to the rights of the parties in accordance with Ark. Code Ann. § 18-60-423 (Repl. 2015).

## II. *Standard of Review*

In civil bench trials, the standard of review on appeal is whether the circuit court's findings were clearly erroneous or clearly against a preponderance of the evidence.[1] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a firm conviction that a mistake has been made.[2] Facts in dispute and determinations of credibility are solely within the province of the fact-finder.[3]

Furthermore, we review issues of statutory interpretation de novo.[4] Our supreme court has directed that the basic rule of statutory construction is to give effect to the intent

---

[1]*Peregrine Trading, LLC v. Rowe*, 2018 Ark. App. 176, at 1, 546 S.W.3d 518, 520.

[2]*Id*. at 1–2, 546 S.W.3d at 520.

[3]*Id*.

[4]*City of Ft. Smith v. Carter*, 372 Ark. 93, 270 S.W.3d 822 (2008).

of the General Assembly.[5] In determining the meaning of a statute, our first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language.[6] This court construes the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible.[7] When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction.

III.  *Discussion*

A.  Chase Mortgages

For her first point on appeal, Mays contends that by ordering the outstanding balances on the notes to be paid from the proceeds of the sale before dividing the proceeds between the parties, the court has forced her to pay for half of the outstanding balance when she has no liability on the notes and no duty to give contribution thereto.  Accordingly, she contends that the circuit court's order contravenes the statute of frauds, codified at Ark. Code Ann. § 4-59-101.  Wallace counters this argument, citing the joint stipulation wherein both parties agreed the mortgages in favor of Chase would be satisfied first as well as the undisputed fact that Mays acquired her interest in the properties subject to the Chase mortgages.

---

[5]*Ryan & Co. AR, Inc. v. Weiss*, 371 Ark. 43, 263 S.W.3d 489 (2007).

[6]*Id.*

[7]*Id.*

On March 10, 2017, the circuit court entered the "Joint Stipulation and Agreed Order of Dismissal Without Prejudice of Separate Defendant JPMorgan Chase & Co.," which states in pertinent part:

> The Petitioner and Respondents have stipulated and agreed that Chase Bank holds a first mortgage upon each of the following real properties: 608 SE "A" Street, Bentonville, Benton County, Arkansas; and 704 SE "A" Street, Bentonville, Benton County, Arkansas. The Petitioner and Respondents have further stipulated and agreed that the mortgages in favor of Chase Bank on each property must first be fully satisfied from the proceeds of a sale of such property.

Despite this language, Mays maintains the order does not specify that the mortgages were to be satisfied from the shares of both parties; thus, it was erroneous for the circuit court to order such. Essentially, Mays argues that the mortgages should have been paid solely out of Wallace's proceeds of the sale. We disagree. There is no language in the joint stipulation suggesting it was the parties' intention for the Chase mortgages to be satisfied exclusively from Wallace's share of the proceeds. The circuit court followed the express terms of the agreement between the parties; therefore, we find no error.

Second, Mays argues that Chase holds a lien only on Wallace's interest in the mortgaged properties and not hers, as long as the balance on the notes can be satisfied by the value of Wallace's interest in the mortgaged properties. There is no dispute the mortgages and notes were executed prior to Wallace's quitclaiming the property to Mays. Thus, Chase has priority over the quitclaim deed. Mays cannot contend she owns an interest in the properties free and clear of the mortgages because a quitclaim deed conveys only such

interest as the grantor then has.[8] Chase's superior lien is on the property itself, not a specific interest in the property.

Mays cites the Arkansas Supreme Court case *Griffin v. Solomon*[9] in support of her contention that Wallace's encumbering the properties does not encumber her interest. In *Griffin*, the appellant and appellee were cotenants in real property. One of the cotenants mortgaged and warranted title to the entire tract to the grantee, then defaulted. The mortgagee filed suit to foreclose on the property, and the chancery court held that interests of all cotenants were subject to the lien. The cotenants not in possession appealed, and the Arkansas Supreme Court reversed, holding that "[t]he fact that [appellee] encumbered the entire title in the instruments heretofore listed, did not ipso facto encumber the appellants' interest."[10] *Griffin* is entirely distinguishable from the facts here because the appellants in *Griffin* acquired their interest in the property before it was encumbered by a mortgage. Here, Mays acquired her interest after the Chase mortgages had been executed, thereby making Mays's interest subject to said mortgages.

Last, Mays argues that the circuit court's order subjecting her interest in the properties to Chase contravenes the statute of frauds, codified at Ark. Code Ann. § 4-59-101. It is well settled that the appellate courts will not consider arguments made for the first time on appeal; an appellant is limited by the scope and nature of the objections and arguments presented at

---

[8]*Kountz v. Davis*, 34 Ark. 590 (1879).

[9]235 Ark. 909, 362 S.W.2d 707 (1962).

[10]*Id.* at 913, 362 S.W.2d at 710.

trial.[11]  A circuit court must have had an opportunity to rule on any arguments before our court will consider those arguments.  Here, Mays never argued that subjecting her interest in the properties to Chase's mortgages violated the statute of frauds.  Because Mays did not advance any such argument before the circuit court, she cannot raise it for the first time on appeal.

For these reasons, we affirm the circuit court's ruling that the mortgage in favor of Chase be satisfied from the total sales proceeds before distributing the remaining proceeds to Wallace and Mays.

## B.  Statute of Limitations

For her second point on appeal, Mays contends that any claim Wallace makes for contribution or reimbursement he incurred is subject to Ark. Code Ann. § 16-56-105(3). Ark. Code Ann. § 16-56-105(3) provides that "[a]ll actions founded on any contract or liability, expressed or implied" must be brought within three years after the cause of action accrues.  Accordingly, she argues any claims for reimbursement of expenses incurred before November 9, 2013, are barred by the statute of limitations.  Mays failed to secure a ruling by the circuit court on this argument.  Because our court will not consider an argument made for the first time on appeal, appellant is now barred from seeking review of her statute-of-limitations argument on appeal.[12]

---

[11]*McCoy v. Robertson*, 2018 Ark. App. 279, 16–17, 550 S.W.3d 33, 42 (citing *Cox v. Miller*, 363 Ark. 54, 210 S.W.3d 842 (2005)).

[12]*See McCoy v. Robertson*, 2018 Ark. App. 279, 550 S.W.3d 33.

9

## C. Arkansas Code Annotated Section 18-60-420

Next, appellant argues that the circuit court erred when it ordered that the properties be sold in a way that required a purchaser to buy all three properties simultaneously. Mays contends that pursuant to Ark. Code Ann. § 18-60-420, selling the properties separately is not optional but mandatory per the statute. In response, Wallace contends Mays's argument runs counter to long-standing precedent that courts should partition property in accordance with its best and most profitable use.

Arkansas Code Annotated section 18-60-420 provides as follows:

(a) If the commissioners appointed under this subchapter report to the court that all or part of the land or tenements of which partition had been directed are so situated that partition cannot be made without great prejudice to the owners of the land or tenements, the court may, if satisfied that the report is just and correct, make an order that the commissioners sell all or part of the land or tenements:

(1) At public auction to the highest bidder; or

(2) By a negotiated sale under terms and conditions established by the court, including without limitation by engaging a licensed real estate broker to sell the land or tenements.

(b) The court making the order of sale shall therein direct the terms and conditions, time and place of sale, the credit, if any, and the security to be taken.

(c) The commissioners shall give notice of the time and place and terms of any sale to be made to them, in accordance with the order of the court directing the sale.

(d)(1) If the premises consists of distinct farms, buildings, tracts, or lots of land, they shall be sold separately.

(2) When any tract of land or lot can be divided for the purposes of sale, with advantage to the parties interested, it may be so divided and sold in parcels.

Because the parties agreed the properties should be partitioned and sold, the court held a trial only to determine the process that should be used to sell the properties and how

10

the net proceeds should be distributed. Ultimately, the circuit court appointed Richard Weaver to serve as the real estate broker for the sale of the properties. As one of the conditions of sale, the circuit court held that all three properties must be bought at the same time by the same buyer:

> Arkansas law recognizes the better practice is to proceed in selling properties as a whole when such sale will bring a better price overall. The Court finds that the Properties will obtain their highest price if sold together. Therefore, each of the three Properties are to be sold individually, but that as a condition of any sale, all three Properties must be bought at the same time by the same buyer.

At trial, Mr. Weaver provided expert testimony that the properties together "as an assemblage" offer an opportunity for a developer to do many different things; however, selling the lots individually would limit the possibilities. He testified that this was especially true with the properties being located in Bentonville, Arkansas, with developments greatly evolving in that area. Having researched comparative sales data, it was Mr. Weaver's conclusion that the properties as an assemblage would sell for somewhere between $19 and $20 per square foot, and individually around $17 a square foot. In sum, he opined that it is more favorable in Bentonville to market the properties collectively. Mays did not present any witnesses to rebut Mr. Weaver's testimony, nor did she provide any evidence during her testimony as to why the properties should not be sold collectively. Instead, Mays's counsel merely directed the court's attention to the language of Ark. Code Ann. § 18-60-420(d)(1) and argued that the statute requires that the three lots be sold separately.

We review issues of statutory construction de novo because it is for this court to determine what a statute means.[13] In this respect, we are not bound by the circuit court's

---

[13]*Johnson v. Dawson*, 2010 Ark. 308, 365 S.W.3d 913.

decision; however, in the absence of a showing that the circuit court erred in its interpretation of the law, that interpretation will be accepted as correct on appeal.[14] Mays's argument essentially centers on the word "separately" in the statute. There is no dispute that the parties agreed to a partition by sale. There is no dispute that the property comprises three different lots of land, each with its own deed and separate address. Rather, Mays maintains that the terms and conditions of the sale established by the circuit court are contrary to the plain language of the statute.

At trial, the court was presented with uncontroverted expert testimony from Mr. Weaver that the properties would obtain their highest price if sold together. Additionally, Wallace directed the court to the holding in *Hadfield v. Kitzmann*, wherein the Arkansas Supreme Court upheld the decision of the chancery court to sell separate tracts in bulk and stated that "[t]he error of offering separate tracts *en masse* is a mere irregularity which does not avoid the sale."[15] Furthermore, on appeal, Wallace cites *Geary v. Kirksey*,[16] in which our supreme court held that two parcels should be partitioned and sold together because testimony indicated the land had "comparatively little value for farming purposes whereas it has a substantial value for use as airplane landing strips."[17]

In accordance with the statute, the circuit court ordered the sale of the properties through a licensed real estate broker with certain terms and conditions thereof. We must

---

[14]*Id.*

[15]223 Ark. 459, 462, 266 S.W.2d 801, 803 (1954).

[16]234 Ark. 325, 351 S.W.2d 846 (1961).

[17]*Id.* at 328, 351 S.W.2d at 837.

read the statute as a whole rather than focus solely on one section or word of the statute as Mays suggests. The court ordered the properties to be sold individually but with the condition that any buyer must buy all three of the properties simultaneously. Arkansas Code Annotated section 18-60-420(d)(1) gives the circuit court the right to set forth the terms and conditions of the sale. Furthermore, Wallace presented uncontroverted expert testimony that the properties would yield the highest profit if sold in such manner. For these reasons, coupled with Arkansas's practice of considering the best and most profitable use of property in partition actions, we find no error and affirm the circuit court's order directing the properties to be sold individually—but as a whole—by the same purchaser.

### D. Attorney's Fees

Finally, Mays argues that requiring her to pay Wallace's attorney's fees solely from her portion of the proceeds directly contradicts the plain wording of Ark. Code Ann. § 18-60-419(a)(1). In response, Wallace contends Mays's reading of the statute focuses only on form and ignores the substance of the parties' interactions.

Arkansas Code Annotated section 18-60-419(a)(1) provides, "In all suits in any of the courts of this state for partition of lands when a judgment is rendered for partition in kind, or a sale and a partition of the proceeds, the court rendering the judgment or decree shall allow a reasonable fee to the attorney bringing the suit." Thus, an award of attorney's fees in partition actions is mandatory.[18] In assessing a reasonable fee award, the court is to

---

[18] *Graham v. Inlow*, 302 Ark. 414, 790 S.W.2d 428 (1990).

consider only those services performed by the attorney requesting the fee that are of common benefit to all parties.[19]

The circuit court ordered Mays to pay Wallace's attorney's fees from her one-half of the remaining proceeds because the testimony at trial revealed that Mays unnecessarily delayed the process of selling the properties. While that may be true, Mays filed the partition action; therefore, pursuant to the express wording of the statute, her counsel is "the attorney bringing the suit" and shall be granted a reasonable fee. The words of the statute are plain, unambiguous, and mandatory; thus, we reverse and remand the issue of attorney's fees to the circuit court.

However, we note that the amount of the award is a determination solely within the circuit court's discretion that will not be reversed absent an abuse of discretion.[20] Furthermore, the statute provides that an award should be limited to only those services performed by Mays's counsel that were for the common benefit to all parties.[21]

### E. Cross-Appeal

Wallace cross-appeals, arguing that the circuit court erred when it ordered the remaining net proceeds from the sale of the properties to be divided between Mays and himself equally rather than distributed "in proportion to their respective rights" as required by Ark. Code Ann. § 18-60-423. In response, Mays contends that a deed granted to two persons, and silent as to the percent of ownership of each cotenant, bestows an undivided

---

[19]*Id.*

[20]*Perry v. Baptist Health*, 368 Ark. 114, 243 S.W.3d 310 (2006).

[21]*See* Ark. Code Ann. § 18-60-419(b)(1).

14

equal—or 50 percent—ownership interest to each cotenant; therefore, the circuit court's order dividing any remaining sales proceeds between herself and Wallace equally should be affirmed.

During trial, Wallace argued, as he does on appeal, that because he incurred the "lion's share" of the maintenance, upkeep, and other expenses on the properties, he is entitled to distributions in kind to his contributions. Wallace cites Ark. Code Ann. § 18-60-423 to support his contention that he was entitled to substantially more of the proceeds than his cotenant. The statute provides:

> The proceeds of every sale, after deducting the costs and expenses of the proceedings, shall be divided among the parties whose rights and interests shall have been sold, in proportion to their respective rights in the premises, and shall be paid to them, their guardians, or legal representatives by the commissioners.

Furthermore, Wallace maintains that the undisputed testimony verifies that ownership of the properties was approached as, and considered, a partnership; therefore, the relative interests of the parties are tied to their contributions. We disagree.

Arkansas Code Annotated section 18-12-603 provides that "[e]very interest in real estate granted or devised to two (2) or more persons, other than executors and trustees as such, shall be in tenancy in common unless expressly declared in the grant or devise to be a joint tenancy." Here, the quitclaim deeds do not assign any specific percentage of ownership to either party nor do they assign any particular form of tenancy. Therefore, pursuant to section 18-12-603, Wallace and Mays own the properties as tenants in common. As tenants in common, Mays and Wallace both own an undivided one-half interest in the property; thus, because the deeds do not assign any specific percentage of ownership between the

15

parties, we find no error in the circuit court's holding dividing the net proceeds of the sale equally between the parties.

IV. *Conclusion*

We affirm the circuit court's order on all counts except the award of attorney's fees, which is reversed and remanded to the circuit court.

Affirmed in part; reversed and remanded in part.

GLADWIN and MURPHY, JJ., agree.

*Mays, Byrd & Associates, P.A.*, by: *Tiffany Mays O'Guinn*, for appellant/cross-appellee.

*Conner & Winters, LLP*, by: *Todd P. Lewis*, for appellee/cross-appellant.